IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELAINE GARVEY,

*Appellant,*

v.                                                        14-CV-03293 (UA)

EUGENE DAVIS,

*Appellee,*

On Appeal from the United States Bankruptcy Court
for the Southern District of New York

*In re Saints Vincents Catholic Medical Center of New York, et al.,*
Case No. 10-11963 (SRM)

*Debtors.*

APPELLANT'S BRIEF

**MENKES LAW FIRM**
**SHERYL R. MENKES, ESQ.**
325 Broadway, Suite 504
New York, New York 10007
Telephone: (212) 285-0900
Facsimile: (212) 658-9408

*Counsel for Appellant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION AND BASIS FOR APPELLATE JURISDICTION ........................... 1

STANDARDS OF REVIEW ............................................................................................ 1

STATEMENT OF THE ISSUES ..................................................................................... 2

STATEMENT OF THE CASE ........................................................................................ 2

ARGUMENT

     IMPOSITION OF SANCTIONS HERE ARE AN ERROR OF
     LAW AND ABUSE OF JUDICIAL DISCRETION................................................. 10

     EVEN IF, ARGUENDO, SANCTIONS WERE APPROPRIATE,
     THE BANKRUPTCY JUDGE ERRED AS A MATTER OF
     LAW AND ABUSED HER DISCRETION IN DENYING
     MENKES T HER RIGHT TO A FORMAL TRIAL PRIOR TO
     IMPOSITION OF SANCTIONS ............................................................................... 14

     EVEN IF, ARGUENDO, SANCTIONS ARE APPROPRIATE
     THE AMOUNT OF $83,515.00 IS EXCESSIVE AND MENKES
     LACKS MEANS TO PAY. ......................................................................................... 14

     PUBLIC POLICY CONCERNS MANDATES THAT THE
     ASSESSMENT OF SANCTIONS ON MENKES BE REVERSED............................ 16

CONCLUSION ................................................................................................................. 16

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Cooter & Gell v. Hartmarx*

496 U.S. 384 (1990) ................................................................................................ 15

*Mackler Productions, Inc. v. Cohen*

146 F.3d 126 (Court of Appeals, 2nd Circuit 1998) ..................................................... 14

*In re Kouterick*

*(Bkrtcy D.N.J. 1994)* ................................................................................................. 13

*In re Omega Trust*

110 B.R. 665 (S.D.N.Y. 1990). ................................................................................. 15

*In re Rainbow Magazine*

77 F.3d 278 (C.A. 1996) ........................................................................................... 13

*In re Sublett*

895 F. 2d 1381(11th Cir. 1990) ................................................................................... 2

*Oliveri v. Thompson*

803 F.ed 1267 (2d Cir 1986) .................................................................................... 15

*Peer v. Lewis,*

12013 WL 1345477 (S.D. Fla 2013) ........................................................................... 14

### FEDERAL RULES

Fed R. Bankr.P. 8103 ................................................................................................. 2

Federal Rule of Civil Procedure 11 ............................................................................ 13

### NEW YORK STATE CASE

*Adriani v. Seamus*

153, Misc 2d 97 (N.Y. Supreme Court 2004) ............................................................... 8

*Chevron Oil Co. v. Dobie*

40 N.Y.2d 712, 358 N.E. 2d 504, 389 N.Y.S. 2d 819 (1976) .................................. 11, 12

*Lumberman Mutual Cas. Co. V. Morse Shoe Co.*

218 A.D.2d 624, 630 N.Y.S. 2d 1002 (1st Dept. 1995) ............................................ 8, 11

*Minafri v. United States Theatres, Inc.*

5 Misc.3d 474, 782 N.Y.S.2d 177(N.Y. Supreme Ct. 2004) ............................... 8, 10, 11

*Murray v. Moore*
122 Misc2d 845, 471 N.Y.S.2d 1010 (N.Y. Supreme Ct.1984) ................................................ 8, 10
*Roman v. Hudson Telegraph Association*
11 A.D. 3d 346, 784 N.Y.S. 2d 484 (1st Dept. 1995) ........................................................... 8, 10, 11
*State v. Wilkes*
41 N.Y.2d, 655 N.Y.S. 2d 840, 263 N.E. 2d 555 (1997) ........................................................ 11, 12
*Vleming v. Chrysler Corp.*
90 A.D.2d 733, 455 N.Y.S.2d 293 (2nd Sept. 1982) ..................................................................... 11

## NEW YORK STATE STATUTES

New York Insurance Law Section 3420(a)(1)........................................................................ 3, 8, 12

## INTRODUCTION AND BASIS FOR APPELLATE JURISDICTION

This matter stems from an Order of the Bankruptcy Judge, dated March 25, 2014, and Memorandum and Decision, dated March 21, 2014, wherein she imposed sanctions in the amount of $83,515.00 on Sheryl R. Menkes ("Menkes"), attorney for creditor Elaine Garvy ("Garvy") for bringing an order to show cause in State Court to lift the automatic stay up to the limits of liability insurance in effect at the time of the tort.

The underlying action in Menkes' order to show cause was a state court claim for nursing home abuse and neglect on behalf of Menkes' client, Garvy. This action was commenced in state court before there was any knowledge that the debtors had filed a Chapter 11 Bankruptcy. The Bankruptcy Judge held from the bench that the order to show cause was not a frivolous motion. However, she was offended that Menkes brought the order to show cause in State Court. The Bankruptcy Judge labeled Menkes' zealous representation of her client as vexatious conduct to form the basis for imposition of sanctions.

Menkes brought the order to show cause in the State Court in good faith. Legal research reveals that New York State Court and the Bankruptcy Court have concurrent jurisdiction to rule on the effect of the bankruptcy discharge on third parties and insurers of the debtors.

Imposition of sanctions on Menkes under these circumstances is an error of law and abuse of judicial discretion. Moreover, even if, arguendo, the imposition of sanctions was appropriate, sanctions in the amount of $83,515.00 is excessive. Further, sanctions in this amount entitle Menkes to a jury trial. Menkes was denied that right.

## STANDARDS OF REVIEW

The standards of review on appeal are clearly erroneous as to findings of act and

1

*de novo* as to conclusions of law. *In re Sublett,* 895 F. 2d 1381(11th Cir. 1990); Fed R. Bankr.P. 8013.

## STATEMENT OF THE ISSUES

I.   The Bankruptcy Judge erred as a matter of law and abused her discretion in assessing sanctions on Menkes for bringing a State Court Order to Show Cause to lift the Bankruptcy Stay up to the limit of the coverage of liability insurance in effect at the time of injury to Decedent.

II.  Even if, arguendo, sanctions were appropriate, the Bankruptcy Judge erred as a matter of law and abused her discretion in denying Menkes her right to a formal trial prior to the imposition of sanctions.

III. Even if, arguendo, sanctions were appropriate, the amount of $83,515.00 is excessive and Menkes lacks the means to pay.

IV.  Public Policy mandates that the assessment of sanctions on Menkes be reversed.

## STATEMENT OF THE CASE

In 2010, Garvy retained Menkes to represent her in a case of nursing home abuse and neglect on behalf of her father, Ronald Brophy, decedent therein. Menkes, a solo practitioner, specializes in nursing home abuse and neglect cases, brought pursuant to New York State Public Health Law Section 2801-d.

Investigation of the relevant medical records revealed that Brophy died a horrendous and painful death in June of 2010, due to bedsores that formed as a result of neglect while Brophy was a patient at debtor's facility, Holy Family Home. Garvy was appointed administrator of Brophy's estate. Menkes, not knowing that the debtor had commenced a bankruptcy proceeding,

2

commenced a State Court action and served debtor with a Summons with Notice on April 19, 2013. **(Exhibit A).** The debtor failed to acknowledge the Summons with Notice in any way.

Menkes, wanting to ensure Garvy's claim was timely filed, commenced a second action by way of Summons and Complaint, dated June 5, 2013, under a new index number. **(Exhibit B).** Menkes intended to discontinue one of the actions after litigation got underway.

Menkes, having practiced personal injury for some twenty years, had previously handled State Court litigation involving defendants in bankruptcy. In such cases, the respective Trustee had always agreed to stipulate to lift the automatic stay up to the amount of liability insurance coverage permitting the State Court Plaintiff to continue his State Court action, with the restriction that compensation would not exceed the amount of liability insurance coverage.

Legal research revealed that the proceeds of liability insurance are not property of the bankruptcy estate; that New York State mandates that entities in bankruptcy have liability insurance coverage pursuant to *New York State Insurance Law Section 3420(a)(1)*; and that there is concurrent jurisdiction between the Bankruptcy Court and the State Court to lift the automatic stay up to the level of liability insurance coverage as well as determining the effect of a bankruptcy discharge on third parties.

Menkes contacted the Trustee, to work out a stipulation to continue the State Court Action up to the amount of the liability insurance proceeds. Shortly thereafter, the Trustee advised Menkes that there was no liability insurance in effect. The Trustee neglected to provide any documentary evidence to conclusively prove that there was no liability insurance in effect. Further, the Trustee failed to address the violation of *New York State Insurance Law Section 3420(a)(1)* that requires the debtors to maintain liability insurance proceeds even in bankruptcy.

3

Nevertheless, the Trustee still insisted that Menkes discontinue the New York State Court Action on her say so.     The Trustee then flooded Menkes' office with self-serving, threatening letters of impending actions that would be commenced against Menkes if she did not withdraw the State Court Action. In this flood of correspondence the Trustee still failed to provide conclusive documentary proof of the lack of an insurance policy or why the debtors did not have liability insurance in effect at the time of the tort.

Menkes and the Trustee exchanged emails wherein Menkes advised the Trustee that she would have to talk to her client who was then away on vacation before discontinuing her state court action.  Menkes was in a dilemma. Menkes knew that discontinuing her client's action on the eve expiration of her client's statute of limitations  without conclusive proof that her client did not have a viable claim  would be legal malpractice.  Menkes also knew that the Cannons of Ethics required her to give her client zealous representation.  Therefore, Menkes could not in good faith advise her client to discontinue her action.

Based on the aforementioned legal research Menkes brought an order to show cause in State Court, seeking such relief, as it seemed incomprehensible to her that no liability insurance existed. **(Exhibit C).**

On the return date of the State Court order to show cause the Trustee's attorney appeared with an affirmation in opposition. From the Trustee's opposition Menkes learned that Decedent was a known creditor because he was served with actual notice of the bankruptcy proceedings. Menkes also learned that this service was a nullity because the Decedent was served two years after he died at the Debtor's own facility. Menkes knew that the Debtor's own records and books contained such information about the Decedent.  Garvy, the Brophy estate administrator, was

4

also a known creditor who was never served with actual formal notice of the bankruptcy proceedings.   Accordingly, Menkes' zealous representation of her client seemed to open up the possibility of Garvy's claim being outside of the Bankruptcy Court's jurisdiction entirely.[1]

At the Trustee's request in State Court, the matter was removed to Bankruptcy Court. Thereafter, the Trustee moved the Bankruptcy Court for an Order Enforcing the Plan Injunction and Sanctions on Menkes. **(Exhibit D).** Throughout the Trustee's papers, the Trustee made *ad hominum* attacks on Menkes, calling her deceitful and devious.

Menkes opposed, arguing the mandate *New York State Insurance Law Section 3420(a)(1)* required that liability insurance be maintained and that service of process on the Decedent, after he died was a nullity; and actual service on Garvy was never effectuated thus their due process rights were violated **(Exhibit E).** Since Menkes' legal research revealed that there was concurrent jurisdiction between State Court and the Bankruptcy Court on this issue, Menkes did believe this was an issue and therefore did not raise this argument.

Oral argument was held wherein the Bankruptcy Judge indicated that Menkes' order to show cause to lift the automatic stay up to the level of insurance proceeds was not frivolous. However, the Bankruptcy Judge was apparently offended that Menkes brought the order to show cause in State Court. **(Exhibit F).** The Bankruptcy Judge did not permit Menkes to argue concurrent jurisdiction.

> *"Again I have to admit being a little perplexed here, to have a state court, or anyone besides a federal bankruptcy court or a federal court lift the stay. That perplexes me that it was even argued."*

---

[1] This matter is currently *sub judice* before Your Honor by way of an appeal.

### Exhibit F, page 53, lines 10-13

*"I have a bit – not a dilemma, but I'm sort of at a crossroads– crossroads here.* **Had a motion been filed here for the automatic stay and enforcement of the plan injunction might have been routine business and properly brought here, you might not have been entitled to fees.** *(emphasis added). So I'm struggling. I will give you fees and expenses for all the state court work that you had to do."*

*"And what I am – I will be candid with everybody in the room. What I am struggling with is that I understand, looking at your letterhead, that you're a sole practitioner, and* **you had an argument that did at least raise to the level of what needed to be brought in this court in the first place." (Emphasis added).**

### Exhibit F page 60, lines 18-24, page 63, lines 16-20.

*MENKES: "Your Honor, I'll –in response, I'll say my research, I have Court of Appeals cases saying there's concurrent jurisdiction in how the bankruptcy court affects third persons - - and that's why I proceeded in state court."*

*COURT: "I have already heard your arguments, I have discounted your arguments. I have made my ruling."*

*MENKES: "No, fine. I didn't bring that up before but I -*

*COURT: "There is a possibility of concurrent jurisdiction in certain matters, but that is not where we are here, and that's not what I had in front of me."*

### Exhibit F, page 62, lines 24-25, page 63, lines 1-10.

The Bankruptcy Judge also held that service on the Decedent, after he died, was

reasonable, as was service on Garvy, the estate administrator, by publication.

> *"I have received opposition to the trustee's motion, which focuses on the fact that her client lacked notice of the bankruptcy or relevant bar dates..........And that, basically, is the crux of our issue.......*
>
> *Coupled with publication notice of the various bar dates, this Court believes that notice was reasonably given and sufficient under the circumstances. The plaintiff in this action was more likely an unknown creditor, as plaintiff's lawsuit had not been filed as of the time of the bar*

6

*date notices were set and served. ....*

*Given the plaintiff's status as an unknown creditor, constructive notice of the bar dart claim–bar claims date by publication satisfies the requirement of due process."*

**Exhibit F, page 59, lines 6-11, page 60 line 5.**

Sanctions were assessed on Menkes for bringing her client's Order to Show Cause in State Court **(Exhibit G).**

Thereafter, Menkes sent the Bankruptcy Judge a letter, reiterating that proceeding in state court with an order to show cause was the result of legal research and not meant as disrespect for the Bankruptcy Court, and that had it been conclusively established that there was no insurance proceeds, Menkes would not have brought an order to show cause asking to lift the stay up to the limited amount of liability insurance proceeds. Menkes also objected to the possibility of sanctions being imposed for the Trustee's State Court opposition papers at the rate of $850/hour **(Exhibit H).**

Menkes then filed further affidavits outlining her research that indicated concurrent jurisdiction with state court; stating that a billing rate of $850.00/hour was obscenely excessive; that she was not financially able to pay sanctions at that rate; and reiterating her good faith basis for proceeding in state court. **(Exhibits I and J).**

The Trustee submitted supporting documentation of billing for ***one*** (emphasis added) affirmation in opposition in state court that totaling $83,515.00 **(Exhibit K).**

On September 19, 2013, another oral argument was held before the Bankruptcy Judge **(Exhibit L).** There, the Bankruptcy Judge glossed over the State Court cases as factually distinguishable. However, she did acknowledge five of the State Court cases that Menkes

7

referred to as authority for bringing an Order to Show Cause in State Court to lift the stay up to the limit of the liability insurance proceeds are on point. They are: *Minafri v. United States Artist Theaters,* **782 N.Y.S. 2d 177 (N.Y. Supreme Court 2004);** *Lumbermen's Mutual Co. V. Morse Shoe Co.,* **218 A.D. 2d 624 (1ˢᵗ Dept. 1995);** *Adriani v. Seamus,* **153, Misc 2d 83, (N.Y. Supreme Court  1992;** *Roman v. Hudson Telegraph Association,* **11 A.D. 3d 346, (1ˢᵗ Dept. 2004);** *Murray v. Moore, 122 Misc.2d 845, 471 N.Y.S2d 1010.*

**Exhibit L page 42 lines 6-25, page 443 lines 1-10.**

However, the Court distinguished in that no liability insurance existed in the instant matter, and the Bankruptcy Judge did not believe that Menkes was unaware of the lack of liability insurance.

> *"The Court also finds it difficult to believe that Attorney Menkes misapprehended the facts that no liability insurance available."*

**Exhibit L, page 43, lines 11-12.**

The Bankruptcy Judge failed to address or even mention why the Debtor was allowed to deviate from the *New York State Insurance Law Section 3420(a)(1)* mandate to maintain liability insurance. Instead, the Bankruptcy Judge ruled that Menkes should have withdrawn her client's claim based only on the Trustee's bald and self-serving letters, emails and telephone conversations. (**Exhibit L, page 43, lines 13-16).**

The Bankruptcy Judge also failed to address Menkes' arguments that Menkes owed her client zealous representation, and that withdrawing her client's claim based on the Trustee's self-serving and bald assertions would be tantamount to legal malpractice. The Bankruptcy Judge further failed to address Menkes' argument that Menkes had a good faith basis for proceeding in

8

State Court, and it was not an act of defiance.[2] (**Exhibit L page 19 lines 3-7, page lines 10-25, page 21 lines 2-10, page 31 lines 9-25).**

Despite the fact that the Bankruptcy Judge had held that five of Menkes' State Court cases allowed Menkes to proceed in State Court to lift the Bankruptcy Stay up to the amount of liability insurance proceeds, the Bankruptcy Judge went on to hold that the Bankruptcy Court was the only forum for Menkes to bring her order to show cause.

> *"If Menkes believed that insurance was required to be kept, and that and that an insurance policy was actually available, I repeat - - I have said it before - - the proper action was to come to this Court to seek stay relief.*

### Exhibit L page 43 lines 16-19.

The Bankruptcy Court denied Menkes' request for reconsideration and issued an order to that effect (**Exhibit M**). The Bankruptcy Judge also failed to address Menkes' argument that the Trustee's cost for making one affirmation in opposition in state court totaled $83,515.00 were excessive. (**Exhibit L page 21 lines 11-16**). In response to Menkes' argument that Menkes was unable to pay a sanction of this amount, and Menkes' offer to make her tax returns available in camera, the Bankruptcy Judge ordered Menkes' 2010, 2011, 2012 and 2013 year to date profit and loss statements and tax returns. Menkes advised the court that the 2012 taxes were not yet been done (**Exhibit L page 46 lines 20-25, page 47 lines 2-25, page 48 lines 7-9).**

Menkes provided copies of her 2010 and 2011 tax returns and profit and loss statements to

---

2

In light of the fact that through Menkes' State Court Order to Show Cause she discovered that there was lack of proper service of bankruptcy proceedings on both the decedent and her client, had Menkes withdrawn her state court order to show cause on the Trustee's say so, this evidence would have never come to light, and it would have been legal malpractice.

the Bankruptcy Court **(Exhibit M).** [3] On the next scheduled court date, Menkes was unable to attend, as she had a prior appearance that she could not adjourn or have another attorney cover for her **(Exhibit N).** The Bankruptcy Judge cancelled any further appearances **(Exhibit O).**

On March 21, 2014, Menkes received the Bankruptcy Judge's Memorandum and Decision Imposing Sanctions on Menkes in the amount of $83,515.00 **(Exhibit P).** No formal hearing or trial was ever held. The Bankruptcy Judge characterized Menkes' zealous representation of her client as vexatious conduct and used that characterization as a rationale to impose the excessive sanctions on Menkes. On March 25, 2014, the Bankruptcy Judge issued the order. **(Exhibit Q).** It is from this order that Menkes appeals.

## I. IMPOSITION OF SANCTIONS HERE ARE AN ERROR OF LAW AND ABUSE OF JUDICIAL DISCRETION

The Bankruptcy Judge labels Menkes' conduct herein as vexatious to form a basis for the imposition of sanctions on Menkes pursuant to 28 U S. C. 1927. This is error. There was nothing vexatious about Menkes' conduct.

There was no willful violation of the automatic stay. Menkes proceeded in State Court with an Order to Show Cause to lift the automatic stay up to the limits of liability insurance coverage. Menkes presents authorities that establish a reasonable basis for her to proceed in state court on this basis. In the first place liability insurance proceeds are not part of the property of the bankruptcy estate. *See **Minafri v. United States Theatres, Inc., 5 Misc.3d 474, 782 N.Y.S.2d 177; Murray v. Moore, 122 Misc.2d 845, 471 N.Y.S2d 1010; Roman v. Hudson Telegraph***

---

[3]. A copy of Menkes' 2012 taxes, her affidavit of truthfulness and her accountant's affidavit are enclosed herein as **(Exhibit R).**

*Associates*, 11 A.D.3d 346, 784 N.Y.S.2d 484.

Further *Chevron Oil Co. v. Dobie,* 40 N.Y. 2d 712, 358 N.E. 2d 504, 389 N.Y.S. 2d 819 (1976); *State v. Wilkes*, 41 N.Y.2d 655 N.Y.S. 2d 840, 363 N.E. 2d 555 (1997); *Lumberman Mutual Cas. Co., v. Morse Shoe Co.,* 218 A.D. 2d 624, 630 N.Y.S. 2d 1003 (1st Dept. 1995); *Vleming v. Chrysler Corp.,* 90 A.D. 2d 733, 455 N.Y.S. 2d 293 (2nd Dept. 1982); *Roman v. Hudson Telegraph Associates,* 11 A.D. 3d 346, 784 N.Y.S. 2d 484 (1st Dept. 2004); *Minafri v. United Artists Theaters, Inc.,* 5 Misc 3d 474, 782 N.Y.S. 2d 177 (N.Y. Supreme Ct. 2004) all provide authority for Menkes' choice of State Court as the proper forum to bring her order to show cause when the issue is the effect of the bankruptcy discharge on third parties.

In *Chevron,* a New York Court of Appeals case, where creditor, Chevron Oil argued that its debts were not subject to the bankruptcy discharge, the Court of Appeals held:

> *"At the outset, a State Court has an inescapable obligation to interpret and apply the Federal statute.... Federal courts, other than the Supreme Court, could pass on the effect of a discharge only if there was an independent basis for Federal jurisdiction. ... A State court remains an appropriate forum for determining the effect of a discharge with three exceptions. Only when these exceptions deal with liabilities for fraud, obtaining money by false pretenses, and willful and malicious injuries are at issue does the Bankruptcy Court have exclusive jurisdiction."*

This holding is explicitly cited as precedent in the aforementioned cases decided subsequent to *Chevron* namely:. *State of New York v. Wilkes, Lumbermens Mutual Casualty Company, v. Morse Shoe Co.,* and *Vleming v. Chrysler Corp.* In fact, *Vleming v. Chrysler Corp.,* specifically holds that:

> *"It is well settled that State courts, with certain exceptions... retain the power to determine the effect of discharge in bankruptcy."*

At the September 19, 2013 oral argument the Bankruptcy Judge distinguished the fact

11

patterns in *Chevron,* and *Wilkes* from the instant matter. However, she failed to mention that the holdings are not fact pattern specific unless one of the three above mentioned exceptions are present, which they are not present in the instant matter.

The Bankruptcy Judge, faced with this case law, held that State Court was an appropriate forum if insurance proceeds were at issue which is not the case here. She then issued a contradictory holding that even if there were insurance proceeds at issue, the Bankruptcy Court is the exclusive forum to bring the matter. *(See Statement of Case).*

Nevertheless, the Bankruptcy Judge discounted all of Menkes' arguments that when she moved in State Court to lift the automatic stay up to the limits of liability proceeds, she did so based on legal research. As for the issue of no liability insurance in existence for Garvy, thereby eliminating the State Court as a proper forum according to the Bankruptcy Judge, even if this were accurate, when Menkes moved in State Court by way of order to show cause to lift the automatic stay up to the limit of liability insurance coverage, it was far from clear as to whether liability insurance was in effect. The Trustee had never provided conclusive documentary proof of lack of liability insurance proceeds. Further, there was never an explanation as to why the debtors were permitted to disregard *New York Insurance Law Section 3420(a)(1)'s* prohibition against bankruptcy or insolvency of the insured absolving the debtors' insurer from payment for injuries sustained during the life of the liability insurance policy. The Bankruptcy Judge also failed to address Menkes' argument that withdrawing her client's case, in light of the State Court precedent and all of the unanswered questions regarding the debtor's insurance coverage, and her client's statute of limitations expiring would have been tantamount to legal malpractice.

While it may be determined that Menkes is ultimately wrong on her choice of state court

12

as a forum to bring her client's order to show cause, this type of legal hair splitting and legitimate disagreement over legal interpretations cannot be deemed a willful violation of any bankruptcy stay, particularly in light of the defective service of the required formal notice that has been briefed on the prior appeal in this matter that is currently *sub judice*. Menkes' choice of New York State Court based on her reasonable belief that it was a proper forum does is not vexatious conduct and does not warrant sanctions.

Furthermore, because the Bankruptcy Judge held that Menkes' order to show cause addressed a viable issue and would not have warranted sanctions if it were brought in the Bankruptcy Court, Menkes' conduct in bringing the subject  order to show cause cannot be deemed a frivolous motion or vexatious conduct.

Sanctions are to be imposed only in exceptional circumstances where there is a claim or motion that is patently unmeritorious or frivolous. *In re Kouterick*, **(Bkrtcy D.N.J 1994)**. Pursuant to *Federal Rule 11* there are two bases for the imposition of sanctions.  One such basis is if the papers are frivolous, in the sense that after reasonable inquiry the sanctioned party could not form a reasonable belief that is grounded in fact and warranted by existing law or good faith argument. The other is if the paper is filed for an improper purpose. *In re Rainbow Magazine*, **77 F.3d 278 (C.A. 1996).** Neither of the two prongs is present here.

Menkes' order to show cause, was not filed in bad faith.  It was not made for any purpose other than to protect her client's rights and interests, in a forum Menkes believed was proper. Menkes' action was not frivolous or patently unmeritorious. This is evidenced by the Bankruptcy Judge's holding that had it been brought  in the Bankruptcy Court sanctions would not be assessed. Therefore, imposition of sanctions herein is an error of law and abuse of discretion.

13

*Peer v. Lewis*, *12013 WL 1345477* (S.D. Fla 2013).

## II.  EVEN IF, ARGUENDO, SANCTIONS ARE APPROPRIATE, THE BANKRUPTCY JUDGE ERRED AS A MATTER OF LAW AND ABUSED HER DISCRETION IN DENYING MENKES T HER RIGHT TO A FORMAL TRIAL PRIOR.

Menkes was never afforded a formal hearing or trial. This is an error of law and abuse of

judicial discretion.  *Mackler Productions, Inc., v. Cohen,* 146 F. 3d 126 (Court of Appeals 2nd

Circuit 1998) holds that:

> *"A troublesome aspect of the trail court's power to impose sanctions, either as a result of a finding of contempt, pursuant to the court's inherent power, or under a variety of rules such as Fed. R. Civ,P-. 11 and 37, is that the trial court may act as accuser, fact finder and sentencing judge, not subject to restrictions of any procedural code and at times not limited by any rule of law governing the severity of sanctions that may be imposed.  (Citations omitted). ... The absence of limitations and procedures can lead to unfairness or abuse....."*

> *"For that reason appellate courts have ruled that, in certain sanction proceedings, the person facing imposition of sanctions should have the benefit of the procedural protections available to a person charged with a crime.  (Criminal protections are generally thought to include, in addition to notice and the opportunity to be heard, the right to a public trial, assistance of counsel, presumption of innocence, the privilege against self-incrimination, and the requirement of proof beyond a reasonable doubt. (Citations omitted)."*

In *Mackler,* the court held that where the sanction at issue was only $10,000.00, and not

$83,515.00 as is the case here:

> *"The imposition of a $10,000 punitive sanction on an individual (as opposed to a corporation or collective entity) requires such protections."*

Thus, it is clear that even if, arguendo, sanctions are appropriate, they must be vacated and

remanded to the jury trial, which Menkes was denied.

## III.  EVEN IF, ARGUENDO, SANCTIONS ARE APPROPRIATE THE AMOUNT OF $83,515.00 IS EXCESSIVE AND MENKES LACKS MEANS TO PAY

14

Menkes, by way of her tax returns and profit and loss statements, clearly shows that she lacks the means to pay this excessively large sanction, even if sanctions were appropriate.

It is incomprehensible that opposition to a routine order to show cause should rise to the level of $83,515.00. Rule 11 sanctions must relate to the violation, the fee and cost award must likewise be limited to those caused by the associated conduct. *Cooter & Gell v. Hartmarx*, **496 U.S. 384 at 406-407 (1990).** The cost for making a simple affirmation in opposition in State Court of $83,515.00 is shockingly excessive, notwithstanding the time records the Trustee submitted. Furthermore, the Trustee was not injured in any way. There was no litigation on going in State Court from the time the order to show cause was submitted up to the time the Bankruptcy Judge mandated discontinuance of the state court matter as void ab initio (discussed at length in the appeal *sub judice).*

Since it is clear that the cost submitted by the Trustee is excessive, that Menkes did not submit a frivolous paper, and that Menkes is without means to pay an $83,515.00 sanction, it is error of law and abuse of discretion not to temper the amount of the sanction.

> *"Given that the underlying purpose of sanctions to punish deviations from proper standards of conduct with a view toward encouraging future compliance and deterring future violation, it lies well within the District Court's discretion to temper the amount to be awarded by a balancing consideration of the sanctioned party's ability to pay."*
>
> ### *Oliveri v. Thompson*, **803 F. 2d 1267(2d Cir 1986).**

> *" A court may also consider the sanctioned party's ability to pay, as that ability will necessarily have an impact on the extent to which an award of sanctions will serve the objective of deterrence.*
>
> ### *In re Omega Trust*, **110 B.R. 665  (S.D.N.Y 1990).**

> *"Factors to consider in determining the amount in sanctions include*

15

> *the impact of sanctions on the offender, including the offender's ability to pay a monetary sanction."*
>
> *Id.*

As shown in Menkes' tax returns and business profit and loss statements, she does not have ability to pay a sanction in the amount of $83,515.00, even if sanctions were warranted, which we maintain they were not.   As such, it is error of law and abuse of judicial discretion to impose this large amount of monetary sanction on Menkes.

## IV. PUBLIC POLICY CONCERNS MANDATES THAT THE ASSESSMENT OF SANCTIONS ON MENKES BE REVERSED

Public policy concerns mandate that this sanction on Menkes be reversed. If attorneys are faced with the precedent of being sanctioned for using a forum they have a good faith basis to believe is correct, it will have a chilling effect on attorneys ability to represent their clients. This in turn will have a chilling effect on the right of the public to be represented by their attorneys.

This chilling effect will be compounded when attorneys who are solo practitioners without the means to pay excessive, unjust sanctions like Menkes will be forced to declare personal bankruptcy or have a judgment entered against them. This will deteriorate their credit rating, making it even harder to provide zealous representation to their clients as they will no longer be able to take loans to finance case disbursements, as personal injury attorneys like Menkes, who take cases on contingency and advance their client's litigation costs must do in order to run their law practices. This in turn will change ability of attorneys who practice personal injury litigation to take cases from client who are without the means to pay retainer fees as the case is ongoing.

## CONCLUSION

For the reasons stated ***surpa,*** Menkes' appeal should be granted in its entirety.

16

Dated: New York, New York
      April 15, 2014

                                        Respectfully submitted,

                                        MENKES LAW FIRM
                                        Sheryl R. Menkes, Esq.
                                        325 Broadway, Suite 504
                                        New York, New York 10007