CASE NO. 14-cv-03293 (PKC)

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELAINE GARVEY
*Appellant,*

v.

EUGENE I. DAVIS,
*Appellee.*

On Appeal from the United States Bankruptcy Court
For the Southern District of New York

*In re Saint Vincents Catholic Medical Centers of New York, et al.*
Case No. 10-11963 (SRM)

*Debtors.*

APPELLANT'S REPLY BRIEF

**MENKES LAW FIRM**
**SHERYL R. MENKES, ESQ.**
325 Broadway, Suite 504
New York, New York 10007
Telephone: (212) 285-0900
Facsimile: (212) 658-9408

*Counsel for the Appellant*

TABLE OF CONTENTS

Page

STATEMENT IN REPLY..................................................................................................1

ARGUMENT.................................................................................................................3

I.      MENKES DID NOT EXHIBIT BAD FAITH OR VEXATIOUS CONDUCT BY
BRINGING HER CLIENT'S STATE COURT ORDER TO SHOW CAUSE TO LIFT THE
AUTOMATIC STAY UP TO THE LIMIT OF LIABILITY INSURANCE PROCEEDS........3

II.     IT WAS THE TRUSTEE WHO PROCEEDED IN BAD FAITH IN ORDER TO
AVOID THE CONSEQUENCES OF HER FAILED SERVICE OF BANKRUPTCY
PROCEEDINGS ON DECEDENT AND PLAINTIFF.....................................................6

III.    TRUSTEE'S ARGUMENTS THAT COMMENCING GARVY'S CLAIM BY
WAY OF SUMMONS WITH NOTICE FOLLOWED WITH A SUMMONS AND COMPLAINT
ILLUSTRATES BAD FAITH ON MENKES'S PART IS A SPECIOUS ARGUMENT
ILLUSTRATING TRUSTEE'S LACK OF KNOWLEDGE OF BASIC NEW YORK LAW
IN THE VENUE OF THE BANKRUPTCY....................................................................10

IV.     REMAINDER OF TRUSTEE'S ARGUMENTS...........................................11

V.      THE BANKRUPTCY JUDGE ABUSED HER DISCRETION IN IMPOSING
SANCTIONS ON MENKES........................................................................................16

VI.     EVEN ARGUENDO WERE SANCTIONS APPROPRIATE, THE AMOUNT IS
EXCESSIVE AND MENKES'S DUE PROCESS RIGHTS ARE VIOLATED AS NO
FORMAL ADJUDICATION WAS HELD......................................................................18

VII.    EVEN ARGUENDO WERE SANCTIONS APPROPRIATE, MENKES LACKS
THE MEANS TO PAY THESE EXCESSIVE AMOUNTS..............................................19

VIII.   PUBLIC POLICY CONCERNS WARRANT THE REVERSAL OF IMPOSITION
OF SANCTIONSON MENKES....................................................................................19

CONCLUSION...........................................................................................................19

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page(s)

Allen v. Whitehall Pharmacal Co.,
115 F.Supp. 7 (S.D.N.Y. 1953).....................................................................8

In re Arch Wireless, Inc. V. Nationwide Paging, Inc.,
(1st Cir. 2008)...............................................................................................3

Brinks Mawt Limited v. Diamond,
906 F. 2d 1519, 18, Fed R. Serv. 3d 695 (11th Cir. 1990)...........................9

Erie v. Thompkins,
304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1118(1938)........................................8

In re Federated Department Stores,
158 B.R. 103 (S.D. Ohio 1993).....................................................................3

J.A. Jones Incorporated v. Tessler Administrator for the Estate of Dunnagan,
492 F. 3d 242 (4th Cir. 2007).........................................................................3

Klaxon v. Stentor Co.,
312 U.S. 674, 61 S.Ct. 734, 85 L.Ed. 1115 (1941)......................................9

Mackler Productions, Inc., v. Cohen,
146 F.3d. 126 (2nd Cir. 1998).......................................................................19

Oliveri v. Thompson,
803 F. 2d 1267 (2nd Cir. 1986).....................................................................20

In re Omega Trust,
110 B.R. 665 (S.D.N.Y. 1990).......................................................................20

Pioneer Inv. Serv. Co. v. Brusnwick Assocs. Ltd.,
507 U.S. 380 (1993).......................................................................................12

Reliable Electric Co. Inc., v. Olson Construction,
725 F. 2d 520 (1984).......................................................................................3

Silvagnoli v. Consolidated Edison Employees Mut. Aid Soc.,
112 A.D. 2d 819 (1st Dept. 1985)...................................................................8

U.S. v. Cardinal Mine Supply Co.,
926 F. 2d 1087 (6th Cir. 1990).......................................................................3

## FEDERAL RULES

28 US Code § 1927..........................................................................................18

Bankruptcy Code § 523(a)(6)...................................................................................8

Federal Rule 4(e)..............................................................................................9

## NEW YORK CASES

*Chevron Oil Co. v. Dobie*,
   40 NY2d 712, 358 NE2d 504, 389 NS2d 819 (1976)...........................................6

*Lumberman Mutual Cas Co. v. Morse Shoe Co.*,
   218 Ad 2d 624, 630 NYS 2d 1002 (1st Dept. 1995)............................................6

*Minafери v. United Artist Theaters, Inc.*,
   5 Misc. 3d 474, 782 NYS 2d 177 (N.Y. Sup. Ct Westchester Co. 2004)..................6

*Roman v. Hudson Telegraph Associates*,
   11 Ad3d 346, 784 NYS2d 484, (1st Dept. 2004)................................................6

*State v. Wilkes*,
   41 NY2d 655, 363 NE 555 (1977)................................................................6

## NEW YORK STATUTES

CPLR § 304.....................................................................................1,3,13

CPLR §306(b)...............................................................................1,3,13

CPLR § 1015..................................................................................2,8

New York Public Health Law § 2801-d..................................................7,3

New York State Administrative Code § 415.12 (c)...........................................7

New York State Insurance Law § 3420(a)(1)............................................2,4,5

iii

## STATEMENT IN REPLY

There was no behavior on the part of Menkes that warrants imposition of sanctions. There was no misconduct, bad faith, devious, dilatory, or vexatious conduct. Menkes' sole motivation was protecting her client's rights.

Menkes had good faith bases for bringing her Order to Show Cause in New York State Court. New York State Insurance Law § 3420(a)(1) gave Menkes a good faith basis to believe the debtor had to maintain liability insurance. New York State Case Law cited *infra* gave Menkes a good faith basis to believe that New York State Courts have concurrent jurisdiction with bankruptcy courts to lift the automatic stay up to the amount of liability insurance proceeds

Appellee is, or should be well aware of this. However to support her unfounded allegations of wrong doing on the part of Menkes, Appellee cherry picks the record to present a laundry list of actions or statements made by Menkes, taken out of context, in the desperate hope something will stick. Furthermore, Appellee ignores her own misconduct that not only gave rise to this matter, but foreclosed plaintiff's opportunity to rightfully proceed in state court to get the justice she deserves for her father's horrendous death at debtor's hands.

For example, Appellee admits in page 7 of the Brief of Appellee' in Opposition to Appeal that Menkes served her with a summons and notice which she cites as an example of Menkes's bad conduct. She then goes on to argue that Menkes did not serve them with this pleading until four months after it was filed as further evidence of Menkes wrong doing. New York State CPLR § 304 gives plaintiff the right to commence her action this way. It triggers a demand for a complaint, that Trustee never made. As an attorney, Trustee knew or should know that she could not ignore a pleading, yet that is exactly what she did. Similarly CPLR § 306-b gave Menkes the right to serve

the pleading 120 days after it was filed. If Trustee did not know relevant New York State Law, she

should have. New York is the venue of this large and complex bankruptcy. Trustee's argument here

not only illustrates the desperation of Trustee's position, it clearly illustrates her dismissive attitude

toward plaintiff and Menkes, a fact that played in Menkes' disbelief of Trustee's bald assertion of

no liability insurance. When Menkes filed her Order to Show Cause in New York State Court it was

far from clear that there was no liability insurance. The Trustee failed to provide Menkes with any

conclusive documentary evidence to prove this. In addition she failed to address or render any

explanation to Menkes why her client did not adhere to New York Insurance Law § 3420(a)(1) which

requires entities to maintain liability insurance in bankruptcy. Thus it did not appear to Menkes that

the Trustee was proceeding in good faith.

Subsequent to the service of the State Court Order to Show Cause, the Trustee failed to

address New York State Case Law enabling Menkes to proceed in State Court to lift the stay up to

the level of insurance proceeds, instead Trustee made the spurious allegation that Menkes lied to the

State Court Judge regarding her knowledge of the existence of no liability insurance by asking that

the stay be lifted up to the amount of said insurance proceeds.

Through the Trustee's opposition to this State Court Order to Show Cause, Menkes was first

presented with affidavits of service of bankruptcy proceedings and bar dates on Brophy, thus proving

his status as a known creditor. **(Exhibit A).** The Trustee made no mention of this fact to Menkes

before she filed her State Court Action. What is more, these affidavits of service evidenced the fact

that decedent had been served at the debtor's facility after he had died. (A true and correct copy of

the death certificate is attached hereto as **Exhibit B).** However, the Trustee dismissed this error

on her part, and never gave Menkes any reason for failure to follow *New York State CPLR § 1015*

that informs service on a dead person a nullity.  In addition, the service of the summons with notice clearly indicated that plaintiff was the Garvy Estate Administrator.  The Trustee dismissed this mistake of hers as well, and did not address why she did not give actual formal notice of the bankruptcy proceedings and bar dates to Garvy as required by *J.A. Jones Incorporated v. Tessler Administrator for the Estate of Dunnagan*, 492 F. 3d 242 (4ᵗʰ Cir. 2007). *J.A Jones International* holds an estate administrator is a known creditor  and is required to be given actual notice of the bankruptcy proceedings.

Had the Trustee provided Menkes with the these documents rather than flood her with self serving threatening letters  Menkes would have proceeded in the appropriate forum. Notwithstanding, lack of actual formal notice violated the creditors due process rights.  See *In re Arch Wireless, Inc. V. Nationwide Paging, Inc.,* (1ˢᵗ Cir. 2008); *Reliable Electric Co. Inc., v. Olson Construction,* 725 F. 2d 520 (1984).  Lack of service also placed their claim against the debtor outside of the bankruptcy proceedings.  *In re Federated Department Stores,* 158 B.R. 103 (S.D. Ohio 1993), citing *Reliable Electric* and *U.S. v. Cardinal Mine Supply Co.,* 926 F. 2d 1087 (6ᵗʰ Cir. 1990).

Further, Trustee ignored the fact that plaintiff's State Court Complaint, brought pursuant to New York Public Health Law § 2801-d,  provides punitive damages and the Trustee knew or should have known that punitive damages are exempt from the bankruptcy discharge pursuant to Section 523 of the Bankruptcy Code, thus plaintiff had the right to proceed  for compensation for these injuries in state court.  The Trustee dismissed this fact as well.  These errors indicated lack of the Trustee's required due diligence in locating and serving known creditors with actual formal notice of the bankruptcy proceedings, and that this error is tantamount to breach of her fiduciary duty. Thus

Trustee has enormous motivation in attempting to make Menkes look like she was proceeding in bad

faith to deflect attention from her own errors and wrongdoing herein.  In furtherance of this

objective, on October 1st, 2013, the Trustee misstated the law to Judge Forrest during oral argument

for a stay of the dismissal of  Garvy's New York State Court case  with prejudice pending appeal

which was argued on October 1, 2013.  This will be discussed *infra*, however the transcript of this

hearing clearly evidences the fact that Judge Forrest's denial of plaintiff's application was based on

the Trustee's knowing misstatements of the relevant law.

## ARGUMENT

**I.**     **MENKES DID NOT EXHIBIT BAD FAITH OR VEXATIOUS CONDUCT BY
BRINGING HER CLIENT'S STATE COURT ORDER TO SHOW CAUSE TO
LIFT THE AUTOMATIC STAY UP TO THE LIMIT OF LIABILITY
INSURANCE PROCEEDS**

When Menkes moved in State Court, by way of order to show cause to lift the automatic stay

up to the amount of liability insurance proceeds, it was far from clear that there was no liability

insurance. **(A true and correct copy of Menkes's State Court order to show cause is found at**

**Exhibit C in the appendix to Appellant's Moving Brief).**

Prior to the filing of this Order to Show Cause, the Trustee had bombarded Menkes with

letters and affidavits consisting of threats and self serving denials of insurance.  However, the Trustee

failed to provide conclusive documentary proof of same such as a copy of the insurance policy or a

declaration sheet that would conclusively prove the liability insurance was extinguished.

The Trustee's assertion of no liability insurance coupled only with threats and a lack of

conclusive documentary proof, was contrary to Menkes's knowledge that New York State Insurance

Law § 3420(1)(a) required entities in bankruptcy to maintain liability insurance. Section 3420(1)(a)

-4-

states:

*"No policy or contract insuring against liability for injury to person except as provided in subsection (g) hereof, or against liability for injury or destruction of property shall be issued or delivered in this state, unless it contains in substance the following provisions which are equally or more favorable to the insured and judgment creditors so far as such provisions relate to judgment creditors; (1) A provision that insolvency of his estate, shall not release the insurer from payment of damages for injury sustained or loss occasioned during the life of and within the coverage of such policy or contract."*

The Trustee never gave an explanation as to how her client was able to circumvent this

mandate. It is only in Appellee's Brief here that the Trustee even mentions this law. In addition, the

Trustee had ignored plaintiff's summons with notice, and never made Menkes aware of the fact that

decedent was a known creditor who was served with actual formal notice of the bankruptcy

proceedings albeit two years after his death. Thus at the time the State Court Order to Show Cause

was filed, Menkes found it hard to believe the Trustee's bald assertions of no liability insurance.

Certainly the Trustee had or should have had access to copies of the insurance policy or other

documentary evidence to forward to Menkes that would support her allegation of no liability

insurance which seemed contrary to the New York Insurance Law mandates. The Lenane declaration

is yet another example of this unsupported claim.

For Menkes to withdraw her client's State Court Action as demanded by the Trustee,

on the eve of expiration her client's statute of limitations, based only on her adversary's bald

assertion that no liability insurance existed without definitive proof, would have been legal

malpractice. Menkes's obligation was to her client, not to the Trustee who sought to have an orderly

administration of her client's bankruptcy proceedings at all costs, while yet ignoring pleadings

and relevant State Law with impunity.

Since Menkes had no proof of no liability insurance, and State Law cases provided a good

faith basis for proceeding in State Court to lift the stay up to the amount of liability insurance

proceeds, it is clear that Menkes did not willfully violate the automatic stay by so doing, and the

Bankruptcy Judge's finding that she did is erroneous.  See *Chevron Oil Co. v. Dobie*, 40 NY2d 712,

358 NE2d 504, 389 NS2d 819 (1976); *State v. Wilkes*, 41 NY2d 655, 363 NE 555 (1977);

*Lumberman Mutual Cas Co. v. Morse Shoe Co.*, 218 Ad2d 624, 630 NYS 2d 1002 (1ˢᵗ Dept. 1995);

*Roman v. Hudson Telegraph Associates*, 11 Ad3d 346, 784 NYS2d 484, (1ˢᵗ Dept. 2004); *Minaferi*

*v. United Artist Theaters, Inc.*, 5 *Misc.* 3d 474, 782 NYS 2d 177 (N.Y. Sup. Ct. Westchester Co.

2004).

The Trustee's argument that Menkes knew there was no liability insurance yet she lied to the

State Court Judge requesting that the automatic stay be lifted up to the amount of liability insurance

is both desperate and ludicrous.  If Menkes knew for certain that there was no liability insurance,

Menkes had nothing to gain by pursuing this relief in State Court.  The Trustee does not set forth any

theory of Menkes' gain by drafting, filing and serving the order to show cause, thereby expending

time, effort, money, and resources.  As a solo practitioner, Menkes cannot afford to expend time,

effort, money and resources on a motion that is known from the outset cannot prevail.  Nor has

Menkes ever made a frivolous motion in her more than twenty years of practicing law.

Menkes addressed this argument at the Septmeber 19, 2013  Bankruptcy Court hearing

where she stated:

"... that there was no insurance was a mistake on my part; I admit that was a mistake,
but that's not a wilful disregard.  And it's an unfortunate mistake, but if I had
realized that there was no insurance, I..I certainly– I may have gone to state court, but
I might have made a different motion. It just– I wouldn't make a motion to let me
proceed against the insurance policy if there is no insurance policy to proceed against.
That just is – to knowingly do that is ludicrous and a waste of time and resources.

And that's– that's basically what I have to say.

The state court cases, many of them, I felt, were analogous to this situation. And if they weren't I would not have gone to state court. I don't disrespect the Court. I don't willingly disobey the court. We're extremely conscientious."

(Exhibit F in plaintiff's moving appeal appendix page 31 lines 9-25).

There is no indication anywhere in the record that Menkes proceeded with her State Court

order to show cause to lift the stay up to the limits of the liability insurance proceeds in bad faith,

or vexatious conduct. The Trustee has no factual basis for this allegation. Since the State Court

Order to Show cause is the crux of the alleged bad faith and vexations conduct on the part of

Menkes, it is clear that assessing sanctions on her for this motion is error.

**II.** **IT WAS THE TRUSTEE WHO PROCEEDED IN BAD FAITH IN ORDER TO AVOID THE CONSEQUENCES OF HER FAILED SERVICE OF BANKRUPTCY PROCEEDINGS ON DECEDENT AND PLAINTIFF**

The Trustee admits having received Garvy's State Court  summons and complaint. (A

**true and correct copy of Garvy's State Court Order summons and complaint can be found**

**at Exhibit B in plaintiff's moving brief appendix).**  This complaint clearly states that plaintiff

was proceeding pursuant to New York Public Health Law § 2801-d which provides punitive

damages for the bed sores her father developed as a result of his neglect while a patient at debtor's

facility.  The Trustee further admits that plaintiff's summons and complaint  seeks punitive

damages on page 8 of Trustee's brief.

The New York State Administrative Code § 415.12 (c) states:

Pressure sores. Based on the comprehensive assessment of a resident, the facility shall insure that :

(1) a resident who enters the facility without pressure sores does not develop pressure sores unless the individual's clinical condition demonstrates that they

-7-

were unavoidable despite every reasonable effort to prevent them; and

(2) a resident having pressure sores receives necessary treatment and services to promote healing, prevent infection and prevent new sores from developing.

Since decedent had a history of bed sore prior to his admission to debtor's facility, debtor's facility knew that he was at risk for bed sore formation, and debtors facility were charged with providing appropriate care and treatment for the prevention of new bed sores and to prevent the deterioration of existing bed sores, yet they did not. This is gross neglect which entitles Garvy to punitive damages. The Trustee knew or should have known that pursuant the Bankruptcy Code § 523(a)(6) willful and malicious injury to others are exempted from the bankruptcy discharge. Therefore, plaintiff's claim, as opposed to one sounding in medical malpractice, was exempted from the bankruptcy discharge and automatic stay, and State Court was an appropriate forum. Trustee dismissed this fact.

Similarly, at the hearing in front of Judge Forrest where appellant argued for a stay of the order dismissing her State Court complaint with prejudice, pending the appeal, the Trustee misstated the law in order to gain an advantage. ( **A true and correct copy of the transcript of this oral argument of 10/1/13 is attached hereto as Exhibit C).** One such misstatement was  Trustee's statement to the court that serving decedent, a known creditor, with bankruptcy proceedings  two years after he died was good service and that New York State Law on this topic did not apply.

The Law of the State of New York controls service of process on a dead person. New York State  Case Law holds  that service on a dead person is a nullity and divests the court of jurisdiction to conduct proceedings until a proper substitution of a personal representative is made. *Erie v. Thompkins*, *304, U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1118(1938); Allen v. Whitehall Pharmacal Co.,  Thompkins*, 304 U.S. 65 (1938); *NY CPLR 1015*; 115 F.Supp. 7. (S.D.N.Y. 1953) citing *Erie v. Thompkins*, 304 U.S. 65 (1938); *NY CPLR 1015*;

*Silvagnoli v. Consolidated Edison Employees Mut. Aid Soc.*, 112 A.D. 2d 819 (1st Dept. 1985);

*Kluxon v. Stentor Co.*, 312 U.S. 674, 61 S.Ct. 734, 85 L.Ed. 1115 (1941).

*Brinks Mart Limited v. Diamond*, 906 F. 2d 1519, 18, Fed R. Serv 3d 695 (11th Cir.

1990) specifically holds:

> *State statute or rule can provide authority for service of process under Rule 4 even when the Federal Court's jurisdiction arises solely through existence of a federal question rather than diversity jurisdiction.*

**Federal Rule 4(e) states:**

> *"Unless federal law provides otherwise an individual other than a minor or incompetent... may be served in a judicial district of the United States by: (1) following the state law for serving a summons in an action brought in courts of general jurisdiction in the state where service is made...."*

All of these citations were in plaintiff's memorandum of law in support of her Order to Show Cause for a stay of dismissal of the State Court Action pending appeal. Thus the Trustee knew or should have known that her service on decedent was a nullity which brought his case outside the bankruptcy proceedings, yet she purposefully dismissed this fact and misstated the law to Judge Forrest at oral argument solely in order to prevail. Interestingly the Trustee came to oral argument without any submissions where authority had to be cited. This left her free to argue that *Erie*, one of the cases relied on by appellant for this proposition did not apply since *Erie* only applied in diversity cases. Plaintiff's other cases were not addressed. The Trustee did not offer any Federal Law or other law that controlled in this matter.

As a result at the October 1st, 2013 oral argument, the following was said:

**The Court:** *How about the point that service on a dead person is a nullity?*

**Ms. Shultz:** *Let me first – that was the next point I wanted to address. So first Ms. Menkes referenced us to Erie. Erie is only applicable if the Court is*

sitting in diversity jurisdiction. *The bankruptcy court is not sitting in diversity*

*jurisdiction so we don't think Erie is applicable.*

**Exhibit C page 24 lines 17-23.**

**Ms. Menkes:** *And as well as serving the decedent who was dead because Erie v. Thompkins does – it states it was a diversity case but it says a federal court sitting in a state must go by that state's law.*

**The Court:** *Sitting in diversity.*

**Exhibit C page 32 lines 6-10.**

In addition, the Trustee deliberately misrepresented decedent's status to Judge Forrest by making up a new category of creditor. As previously stated, debtor admitted that decedent was a known creditor by virtue of the purported actual service on him after he had already died. The Trustee dismissed this fact and made up a new category of creditor. One who is both known and unknown. The Trustee argued that decedent was known for some claims, the identity of which she could not state because of her "kitchen sink" service, and he unknown for other claims, such as medical malpractice claim. Thus constructive service on the decedent for this claim was sufficient. (**Exhibit C page 25 lines 18-25, page 26 lines 2-25, 33 lines 14-25, page 34 lines 6-13, page 35 lines 2-5**).

There is absolutely no law that creates this fiction of a person being both a known and unknown bankruptcy creditor. A known creditor can claim all debts he is owed. However, Trustee's implied assertion of expertise in this area, convinced Judge Forrest that decedent could be and was both known and unknown as to his medical malpractice claim. (**Exhibit C page 32 lines 18-25**).

After the Trustee's blatant misrepresentation of this law the following colloquy was held:

**Ms. Menkes:** *Ms. Shultz said the decedent was both known and unknown. There is no case law that says you can be known and unknown. Either you are known or you're unknown. There is no overlying circle that you can be both.*

**The Court:** *Well, what Ms. Shultz argues is – – this is where I made the point about Mr. Brophy was both a known creditor but also unknown, that he – it does appear as if his medical malpractice claim was unknown....*

**Exhibit C page 37 lines 17,20, 24,25, page 38 lines 1,2 .**

**The Court:** *All right. Lets just stop for a moment because Mr. Brophy it sounds like is both a known creditor or something and we're not sure what. But he was somehow on the books, on the trustee's list of known creditors but he also was an unknown creditor. Do I have that right? Because it sounds like you folks did serve him as a known creditor in the bucketed of known creditors.*

**Ms. Shultz:** *We served him in the bucket of potential creditor, not necessarily known creditors.....*

**Exhibit C page 33 lines 14-22.**

Perhaps the most troubling misrepresentation was the Trustee's response to Judge Forrest's

query as to whether there was another route within the bankruptcy proceeding that plaintiff could use

to liquidate her claim within the bankruptcy proceeding. The Trustee in great length set forth the

possibility of late proof of claim for plaintiff as an alternate proceeding to liquidate her claim within

the bankruptcy proceedings if it was dismissed from State Court. **(Exhibit C pages 21 lines 11-25,**

**page 22 lines 1-25, page 23 lines 1-25, page 24 lines 1-2).**

**The Court:** *But lets take an alternate route. The alternate route is that the state court action is dismissed. You go back to which would moot the appeal in front of Judge Castel, I would assume. You go back to bankruptcy court. You file a motion for a late notice of claim on the b basis of excusable neglect. Let's assume for the moment it's been denied. Based upon similar reasoning that was used as to the issues here. That then does leave the opportunity for an appeal to the district court on the same bases, largely as what you are arguing right now. In other words, you'd be arguing known versus unknown and you'd be arguing whether the excusable neglect standard had been met. So, you'd be able to pursue those.*

*And if you are correct that there is a likelihood that the district court would reverse then you would get a reverse back down to the bankruptcy court . You'd get a notice of claim an then undertake the proceedings that*

*Miss Shultz has described. Why isn't that sort of at least an alternative that gives you a second pathway so that you're not DOA if you have to dismiss your state court action.*

**Exhibit C page 42 lines 2-21.**

While the Trustee very briefly mentioned "Pioneer Standard" of *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd., 507 U.S. 380 (1993)*, and that she did not think plaintiff would be successful the bankruptcy court granting permission to file a late notice of claim, the Trustee failed to advise the court of the prongs of the "Pioneer Standard, or how highly restrictive it is. This left Judge Forrest with the false belief there was an actual and viable alternate route plaintiff had to pursue her claim. This deception was apparently a major factor in her denial of plaintiff's application to stay the dismissal of her case pending appeal, which would forever bar plaintiff from State Court as her statute limitations would be expired **(Exhibit B page 42 lines 1-25)**,[1] (See also appeal decision 1:13 CV 06902 PKC).

**III.    TRUSTEE'S ARGUMENTS THAT COMMENCING GARVY'S CLAIM BY WAY OF SUMMONS WITH NOTICE FOLLOWED WITH A SUMMONS AND COMPLAINT ILLUSTRATES BAD FAITH ON MENKES'S PART IS A SPECIOUS ARGUMENT ILLUSTRATING TRUSTEE'S LACK OF KNOWLEDGE OF BASIC NEW YORK LAW IN THE VENUE OF THE BANKRUPTCY**

Trustee argues that Menkes exhibited bad faith by:

*" serving them with summoning them toserve a notice of appearance on Ms. Menkes ....over four months after the action was commenced...Notably the summons did not attach a copy of a complaint, did not specify the dates of alleged claims, it failed to establish that the Plaintiff was purportedly pursing the state court action against the debtor solely for the purpose of obtaining a judgment and recover from insurance proceeds." (See Appellee's Brief p.7).*

---

[1] Menkes is primarily a personal injury attorney. She was not prepared to argue a late notice of claim at oral argument. However, the Trustee certainly knew that it would an uphill climb for plaintiff to prevail on this motion and did not advise Judge Forrest.

This argument illustrates both the desperation that Trustee's claim of wrong doing on the part of Menkes, as well as the Trustee's lack of knowledge of the law of New York, the venue of this large complex bankruptcy. If Trustee did not know Ne York State Law, she should have researched it, asked her New York Law Firm for an explanation, or even telephoned Menkes.

A summons with notice can be served pursuant to New York CPLR 304. This requires a demand for a complaint. New York CPLR Section 306-b gives 120 days to serve after the summons after it is filed. Thus Trustee's citing to the fact that this summons with notice was served four months after it was filed as some example of wrongdoing on the part of Menkes confirms the Trustee's desperate attempt to look for anything to make Menkes look bad, and to deflect attention from her apparent breach of her fiduciary duty. This also illustrates the Trustee's dismissive attitude toward plaintiff since she ignored this pleading in its entirety. Therefore, Menkes hired an investigator to find out no demand for a complaint was made. It was through the investigator that Menkes first learned of debtor's bankruptcy and researched who the Trustee was and contacted her.

The summons and complaint to which Trustee points as another example of bad faith, is yet another example of the Trustee's lack of knowledge of very basic New York Law. Since no demand was ever made for the complaint, Menkes started a new action under a new index number for the sole purpose of protecting plaintiff's statute of limitations, thereby expending more money on her clients case as well. There was no bad faith, misconduct or vexatious behavior on the part of Menkes in so doing.

## IV.   REMAINDER OF TRUSTEE'S ARGUMENTS

Because of lack of evidence of bad faith or vexatious conduct on the part of Menkes, the Trustee goes through the entire record to cherry pick as much as they can hoping something will

stick. The remainder of their spurious arguments of bad faith on the part of Menkes are addressed below.

### A.   **Appellee's Allegation**

Counsel for the Liquidating Trustee made Ms. Menkes aware that (I) prosecution of the State Court Action violated the Plan Injunction and automatic stay; and (ii) that the Liquidating Trustee was preparing to file its enforcement Motion before the Bankruptcy Court.

#### *Appellant's Response*

The Trustee never provided conclusive documentary evidence that no liability insurance existed thus Menkes had a good faith basis for her Order to Show Cause in State Court . This has been addressed *supra.*

This is not evidence of bad faith, dilatory or vexations conduct on the part of Menkes. It is evidence of the Trustee's strong arm tactics  and dismissive attitude toward Menkes and her client.

### B.   **Appellee's Allegation**

Counsel of the Liquidating Trustee made Menkes aware that there was no insurance available to satisfy claimant's claim.

#### *Appellant's Response*

See comments directly above. In addition, it begs the issue that punitive damages are exempt from the bankruptcy discharge.

This is not evidence of bad faith, dilatory or vexations conduct on the part of Menkes.

It is evidence of the Trustee's strong arm tactics and dismissive attitude towards Menkes and her client.

### C.   **Appellee's Allegation**

Ms. Menkes repeatedly represented to the Liquidating Trustee that she would recommend to her client that the State Court Action be withdrawn and was confident that her client would consent.  As a result of these representations, the Liquidating Trustee acquiesced to Ms, Menkes' request that they delay  the filing of the Enforcement Motion before the Bankruptcy Court, so that Ms. Menkes could have the opportunity to withdraw the State Court Action.

*Appellant's Response*

Menkes did advise the Trustee that she had to discuss this matter with her client before she could withdraw the State Court Action. The decision of whether or not to withdraw was discussed with Menkes and her client up until close to the return date of the Order to Show Cause. However based on the Trustee's threatening letters, no documentary proof of no insurance, and no explanations as to why there was no insurance, Menkes did not believe the Trustee's bald allegations of having no insurance.     Furthermore, Menkes did not conclusively state she would withdraw the State Court Action; She did not specifically ask the Trustee to hold off making the State Court Action, nor did she signany stipulation or any agreement to withdraw. This is evidence only of zealous representation, not dilatory tactics or bad faith.

D.   **Appellee's Allegation**

Despite Ms. Menkes's representations to the Liquidating Trustee regarding forthcoming withdrawal of the State Court Action, Ms. Menkes, instead filed the Show Cause Affirmation and obtained the State Court Order to show cause seeking lifting of the "automatic stay up to the limits of insurance coverage existing at the time of decedent's injuries

*Appellant's Response*

This has been dealt with above and supra in this brief.  Menkes had a good faith basis to move via order to show cause in state court to lift the stay up to the limit of insurance proceeds. This basis is primarily supported by the Trustee's failure to provide documentary evidence of no liability insurance.  Menkes never represented with certainty that the state court action would be withdrawn and she never signed a stipulation or any document to that effect.

*Appellee's Response*

This is not evidence of bad faith, dilatory or vexatious conduct on the part of Menkes, only zealous representation of her client and preservation of her clients' rights. Menkes would have no reason to move to lift the stay up to the limit of insurance proceeds if it was clear that none existed.

E.   **Appellee's Allegation**

Ms. Menkes' Show Cause Affirmation failed to alert the State Court that there was no liability insurance available to satisfy the Claimant's claims."

*Appellant's Response*

It was far from clear that no liability insurance existed. Ms. Menkes did not believe

that no liability insurance existed as evidenced by her order to show cause to lift the stay up to th limit of liability insurance. To argue that Menkes was not being truthful with the State Court by making this motion, further illustrates the desperation of the Trustee's position.

**F**    **Appellee's Allegation**

*Appellant's Response*

Ms. Menkes concealed the State Court Order to Show Cause from the Liquidating Trustee for almost a month, while at the same time continuing to represent that the State.

*Appellant's Response*

This has been dealt with supra in this brief. The Order to Shows Cause was not concealed. The service of same followed the parameters set by the Judge. During this time discussions were stillongoing with her client regarding discontinuing the State Court Action. The Order to Show Cause could be withdrawn prior to the return date, or dismissed if the movant failed to appear. However itwas not as it was far from clear that there was no liability insurance.     This again is  not evidence of bad faith, dilatory or vexatious conduct on the part of Menkes, only desperation of the Trustee.

**G**    **Appellee's Allegation**

As  result of Ms. Menkes' subterfuge, the Liquidating Trustee repeatedly delayed the filingof the Enforcement Motion, and by the time Ms. Menkes notified the Liquidating Trustee that theState court Order to Show Cause had been issued, it was too late for the Liquidating Trustee to obtain a return date for the Enforcement Motion that was prior to the hearing in State Court.

*Appellant's Response*

This has been addressed *supra* in this brief.  There was no subterfuge on the part of Menkes.She signed no stipulation or agreement nor did she conclusively state her client would withdraw herState Court Action. The Trustee allegedly delayed filing the Enforcement Motion by only 29 days. The Trustee lost nothing and was in no way prejudiced by this 29 day delay and Trustee make no claim of prejudice as a result.

Through the State Court Order to Show Cause, Menkes achieved clarification regarding the Liability insurance issue, and by way of  Trustee's opposition she obtained the purported affidavits of service on decedent which indicated decedent was a known creditor and that he had not been served notice  until two years after his death. This meant that service on him was a nullity.  Had Menkes not moved by way of order to show cause in State Court she would have never learned this. This is not

-16-

evidence of bad faith, dilatory or vexatious conduct on the part of Menkes, only zealous representation of her client and preservation of her clients' rights.

All of the Trustee's allegations of misconduct on the part of Menkes are without basis. All Menkes did was zealously protect her clients rights, therefore the assessment of sanctions for bad faith, dilatory and vexatious conduct is erroneous. In other portions of the brief, appellee argues that Menkes did not attend the bankruptcy court hearing in December due to a purported engagement. Trustee neglects to state that Menkes provided an affirmation of engagement along with emails proving she had a hearing to attend she could not adjourn. **(Exhibit N in Appellant's moving brief).**

Again this is not evidence of bad faith, dilatory or vexatious conduct, but rather evidence of the Trustee's desperate attempt to make Menkes look bad, in the hope that Menkes's motion for late proof of claim can be denied based one Menkes's purported bad faith.

## V. THE BANKRUPTCY JUDGE ABUSED HER DISCRETION IN IMPOSING SANCTIONS ON MENKES

The Bankruptcy Judge abused her discretion in assessing Menkes with sanctions.

The crux of the Bankruptcy Judge's imposition of sanctions was that she was offended that Menkes moved to lift the stay to the limit of insurance proceeds in State Court.   New York State Case Law gives the State Court concurrent jurisdiction in that arena. Menkes so stated on the record on August 15, 2013 as follows:

**The Court:** Why did you do an order to show cause in state court instead of coming to this Court? What was your purpose in doing that?

**MS. Menkes:** Because at that point, I was under the impression that there was property that was not part of the estate, there was insurance, if–

**The Court:** After you had been told.

**Ms. Menkes:** I was given no supporting documentation.   I was just given a–

-17-

somebody told me something on the phone. I was not –never was sent any documents by the Trustee, other than threatening letters and copies of motions ...."

See Exhibit F in appellant's moving brief appendix page 46 lines 11-22.

**The Court:** Again, I have to admit to being a little perplexed here, to have a state court or anyone besides a federal bankruptcy court or a federal court lift the stay. That perplexes me that was even argued.

See Exhibit F in appellant's brief moving brief appendix page 53 lines 10-13.

**The Court:** I have a bit –not a dilemma, but I'm sort of at a crossroads –crossroads here. **Had a motion been filed here for the automatic stay and enforcement of the plant injunction might have been a routine business and properly brought here, you might not have been entitled to fees.** (emphasis added).

See Exhibit F in appellant's moving brief appendix page 60 lines 18-22.

**The Court:** And what I am – I will be candid with everybody in the room. What I am struggling with is that I understand looking at your letterhead that your are a sole practitioner, and you had an argument that did at least raise to the level of what needed to be brought in this Court in the first place....

See Exhibit F in appellant's moving brief appendix page 63 lines 16-20.

Pursuant to 1927 of Title 28 of the United States Code, sanctions are appropriate when:

[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies proceedings in any case unreasonably or vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

As has been analyzed in depth *supra*, there was no vexatious conduct on the part of Menkes or multiplied proceedings as a result. Menkes had a good faith belief that there was liability insurance and that State Court was a proper forum with concurrent jurisdiction with the bankruptcy court to lift the stay up to the limit of liability insurance proceeds. While Menkes did discuss with her client the withdrawal of her case, ultimately, based on the lack of documentary evidence of no liability insurance Menkes decided it was not in her clients' best interests to do so. Menkes had not definitively agreed to withdraw appellant's State Court Action before the filing of the Order to Show Cause, nor had Menkes signed a stipulation to that effect. Menkes made no false representations to any Court. She

did not refuse to follow any Court Order, even when it required her to dismiss her clients' case with

prejudice when case law seemed to indicate that an incorrect result.   Thus imposition of sanctions on

Menkes is an error.

## VI.   EVEN ARGUENDO WERE SANCTIONS APPROPRIATE, THE AMOUNT IS EXCESSIVE AND MENKES'S DUE PROCESS RIGHTS ARE VIOLATED AS NO FORMAL ADJUDICATION WAS HELD

There was no behavior on the part of Menkes that warrants the imposition of sanctions.

However, even if arguendo, there was such behavior, the amount here is excessive. Imposition of

sanctions in this large amount without a formal trial violates Menkes's due process.

This issue has been briefed in appellant's moving papers.   Appellee now points out that only

$17,929.00 was for State Court fees, apparently in the hope that if this Court wants to impose a lesser

sanction they have a number.   However, $17,929.00 is excessive as well and presents the same process

concerns.   See *Mackler Productions Inc. v. Cohen*, 146 F.3d. 126 (2*nd* Cir.1998).

Appellee's citation in their brief to the Bankruptcy Judge's statement on the record that she did

not believe Menkes did not know no liability insurance existed is the exact reason that the *Mackler*

Court held that due process concerns, a presumption of innocence, proving of guilt beyond a

reasonable doubt and a jury trial are essential when the sanction imposed is large since the judge

should not act as the fact finder and the judge:

" A troublesome aspect of the trial court's power to impose sanctions, either as a result
of finding contempt, pursuant to the court's inherent power, or under a variety of
Federal Rules.... is that the trial court may act as accuser, fact finder, and sentencing
judge., not subject to the restrictions of any procedural code and at times not limited
by any rule of law governing the severity of sanctions imposed.    The absence of
limitations and procedures lead to unfairness or abuse.  *Id* **at 139.**

*Mackler* went on to hold that in instances of excessive sanctions, which were less than the

$17,929.00 here,   due process consideration make it necessary for a finding of proof beyond a

reasonable doubt.

Since Menkes has been denied this right, if sanctions are imposed she must be able to have a

jury trial make the determination of whether sanctions should be imposed, and if so, what amount.

VII.    **EVEN ARGUENDO WERE SANCTIONS APPROPRIATE, MENKES LACKS THE
MEANS TO PAY THESE EXCESSIVE AMOUNTS**

This has been briefed in detail in appellant's moving papers. Menkes' tax returns and profit

and loss from business statements for 2010-2012 are before the Court for in camera review. Tax

returns and profit and loss from business for 2013 will be provided upon completion.

From the records produced it is clear that Menkes cannot pay these amounts.  Imposing

excessive sanctions on an individual who is not able to pay, even if they are appropriate which they

are not here, does not serve the objective of deterrence.  See *Oliveri v. Thompson*, 803 F. 2d 1267 (2

Cir 1986); *In re Omega Trust*, 110 B.R. 665 (S.D.N.Y. 1990).

VIII.   **PUBLIC POLICY CONCERNS WARRANT THE REVERSAL OF IMPOSITION OF
SANCTIONS ON MENKES**

As argued in her moving brief, it would have a chilling effect on attorneys ability to represent

their clients, if the fear existed that a good faith mistake or a good faith disagreement with a judge over

legal interpretation could not only warrant the imposition of sanctions, but sanctions large enough to

effectively ruin their lives.  This is not the objective of the imposition of sanctions or the behavior they

are designed to deter.

**CONCLUSION**

Menkes's actions were dictated solely by good faith beliefs based on existing New York State

Law and Case Law, the imposition of sanctions on her is erroneous.

For the reasons stated *supra*, Menkes' appeal should be granted in its entirety.

New York, New York
Dated: June 13, 2014

Menkes Law Firm
Sheryl Menkes, Esq.
325 Broadway, Suite 504
New York, NY 10007
Telephone: (212) 285-0900
Facsimile: (212) 658-9408

*Counsel for Appellant*

-21-