EXHIBIT C

TRANSCRIPT OF ORAL ARGUMENT BEFORE HON. FORREST
10/1/13

```
                                                               1
DAIAAINRO             Order to Show Cause
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
IN RE: SAINT VINCENT'S
CATHOLIC MEDICAL CENTERS OF
NEW YORK, ET AL.,

                    13 MC 333 (KBF)

------------------------------x
                                        New York, N.Y.
                                        October 1, 2013
                                        9:00 a.m.

Before:

            HON. KATHERINE B. FORREST,

                                        District Judge

                      APPEARANCES

MENKES LAW FIRM
    Attorneys for Garvey
BY: SHERYL MENKES

AKIN GUMP STRAUSS HAUER & FELD, LLP
    Attorneys for St. Vincent Defendant
BY: SARAH LINK SCHULTZ
ANGELINE L. KOO
```

```
1
1
2
2
3
3
4
4
5
6
6
7
7
8
8
9
9
10
10
11
11
12
12
13
13
14
14
15
15
16
16
17
18
19
20
21
22
23
24
25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

DA1AA1NRO

2

```
                Order to Show Cause
 1
 2      THE COURT:  Good morning, everyone.  Please be seated.
 3      (Case called)
 3      MS. MENKES:  Sheryl Menkes, M-e-n-k-e-s, attorney for
 4  creditor Elaine Garvey and plaintiff in the state court action.
 5      THE COURT:  All right.  Good morning, Ms. Menkes.
 6      MS. SCHULTZ:  Good morning, your Honor.
 7      Sarah Schultz and Angeline Koo, Akin Gump Strauss
 8  Hauer & Feld, counsel for the liquidating trust Eugene I.
 9  Davis.
10      THE COURT:  All right.  Thank you.  Good morning.
11      I am sitting as the Part One judge this week and
12  received yesterday the order to show cause for a temporary
13  emergency stay in the state pending appeal on behalf of
14  creditor Elaine Garvey through attorney Menkes.
15      Am I pronouncing your name correctly?
16      MS. MENKES:  Yes, your Honor, your Honor.
17      THE COURT:  The matter's been assigned to Judge Abrams
18  who was not able to take it.  So Part One in this kind of case
19  steps in and indeed Part One often does temporary emergency
20  stays in any event.
21      I asked for you folks to come in and be heard on this
22  immediately because of the timing of what I perceived in my
23  very quick review yesterday of the papers and then a rereview
24  of the papers which is the September 30th date that had been
25  set up by the bankruptcy court pursuant to which the state
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

3

DAIAAINRO                    Order to Show Cause

1    court action by the creditor Elaine Garvey was to be withdrawn
2    as I understand it.
3
4          MS. MENKES:   Dismissed with prejudice.
5          THE COURT:   Dismissed with prejudice.  And without
6    knowing very much about the facts here, I didn't want to grant
7    more than a very limited emergency one day stay until I can
8    figure out what's really going on, so that you folks can fill
9    me in.  And I didn't want to do it ex parte, so here we are.
10         As I understand it having been through the papers, it
11   appears that there was an individual who passed away at a
12   hospital which has since entered bankruptcy that, Ms. Menkes,
13   you were hired within a month or two of the death of that
14   patient that after the bankruptcy occurred there was, the
15   regular claims bar process was noticed up but the information
16   was sent, I think actually, to the hospital, perhaps, where the
17   decedent was last I guess, in quotes, residing.  And that
18   subsequent to that there was no timely notice of claim, I
19   guess, filed.  I think that's one of the primary issues.
20         And then the action was commenced and there's been
21   some scuffling back and forth about whether or not the action
22   can be litigated in light of the automatic stay.  And then
23   there is the issue about whether or not the action can be
24   litigated at least up to the amount of some potential coverage
25   of insurance as to which I understand there's a dispute.
           So the issue here for this Court is a very narrow one.

              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

4

DAIAAINRO        Order to Show Cause

1   And it really is whether or not there is basis upon which this
2   Court should overturn a very learned colleague of mine, the
3   chief bankruptcy judge's decision to require the state court
4   action to be dismissed pursuant really to orderly bankruptcy
5   procedure.  And I've read through the transcript of that
6   proceeding and it appeared that the bankruptcy judge had, she
7   had very carefully gone through the various rules that are
8   applicable here.
9       So for me to stay her decision is, I think, the only
10  issue before me.  It would be a temporary stay in any event --
11  that's all we're here for -- because any application,
12  generally, for a stay would go before Judge Abrams.  However, I
13  don't think that if the temporary stay, if it doesn't issue I
14  don't think there's really anything left to be done.  I think
15  that the action in the state court goes away and there may be
16  nothing left for Judge Abrams.
17      So with that said, tell me if I've got the contours of
18  the situation right, Ms. Menkes and then why don't you go ahead
19  and address whatever you'd like to address as to why I should
20  impose a stay
21      MS. MENKES:  The contours are almost correct.  But
22  when the patient was served with notice of the bankruptcy
23  proceedings he'd already been dead at least one year and the
24  debtor's records indicated that he was deceased, that he had
25  not been there for at least a year.  And it also indicated the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5

```
1    DAiAAINRO          Order to Show Cause
2    addresses of his next of kin his daughter, the current
3    administrator and his wife.
4        THE COURT:  Let me ask you just a couple of
5    preliminary questions so that I can understand, get a sense of
6    the facts.  Was the patient a long term resident of that
7    facility?
8        MS. MENKES:  He had two admissions in 2010.
9        THE COURT:  Was this a -- but it was a short term
10   hospital?
11       MS. MENKES:  No, your Honor.  It was a nursing home
12   where people are taken out of the community because they can't
13   function in the community because they're so ill.  He had
14   psychosis and dementia.  He was transferred there from a
15   hospital.
16       THE COURT:  All right.  And when was the state court
17   action that you were retained for first filed?
18       MS. MENKES:  In, I believe it was in 20 -- I have to
19   look.  I believe it was 2013.
20       THE COURT:  So why did you wait from -- as I
21   understand it, he died --
22       MS. MENKES:  2010.
23       THE COURT:  -- in 2010.
24       MS. MENKES:  Because I had to get all the records
25   together and get them reviewed by an expert.  And according to
     state court law there is the insanity toll CPLR 208, someone
              SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300
```

6

DAIAAINRO                Order to Show Cause

1    who doesn't have the capacity to care for their own legal
2    affairs has a three years statute of limitations toll from the
3    date of their death. So his claim was timely filed.
4        I just wanted to add in term of a background however,
5    that the nursing home's own records as I said, indicated the
6    location of the next of kin.
7        THE COURT: And, apparently -- and this will be
8    something that counsel for the defendant will address, the
9    trustee I should say, the decedent was listed as a creditor.
10       MS. MENKES: That's correct, your Honor.  He was
11   listed as credit or.  I believe it was because the
12   administrator sent HIPAA compliant authorizations for medical
13   records prior to any bar dates and stated on these HIPAA
14   complaint authorizations that the purpose of the records was
15   for litigation.  Although the trustee has not come forth with a
16   reason why he was listed as a creditor.  Now for the last -- he
17   was listed a creditor.  He was served about a year with one and
18   two -- after death and two years after death with a second
19   notification.
20       According to Erie v. Thompson -- Thompkins, the
21   federal court has to go by the state court law for substantive
22   law in the state where they're sitting.  New York Substantive
23   Law is very clear that service of process on a dead person is a
24   nullity and I've cited to that New York statute in my papers as
25   well as cases.  And the New York State Law is very clear that

7

DAIAAINRO          Order to Show Cause

1   any action with a dead person is stayed pending the appointment
2   of administrator.
3          THE COURT:  Well, let me just have you pause there.
4   Does the service of process for that point, are you trying it to
5   when the notice of claim was served or onto something else?
6          MS. MENKES:  No.  When the notice was served onto the
7   decedent of the bankruptcy procedures there were several
8   different notices served to him.  The debtors served themselves
9   at their own facility.  The decedent had been dead for two
10  years.
11         THE COURT:  That was the point I was trying to get at.
12  Your point is that under state law the service issue goes to
13  the service upon the decedent of the bankruptcy matters.
14         MS. MENKES:  Of any matter, service or process.
15         THE COURT:  But including here most importantly
16  including what would have been notification of the bankruptcy
17  proceeding.
18         MS. MENKES:  Correct.  It's a nullity by state law.
19         In addition, Elaine Garvey became the administrator of
20  the estate and there's a bankruptcy case which I've cited to.
21  I can look for it in my papers.  The executor of estate is a
22  known creditor.  So therefore that required actual notice.  In
23  the underlying motion that went on the bankruptcy judge ruled
24  that the debtor acted reasonably by serving a dead person and
25  that Ms. Garvey was an unknown creditor therefore, publication

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

DAIAAINRO                    Order to Show Cause                          8

1   was sufficient.

2          THE COURT:  Well, let me ask you, the reason that you

3   take a position that Ms. Garvey was a known creditor is because

4   the decedent was listed as a creditor or --

5          MS. MENKES:  No because there's cases that say the

6   executor of an estate, not a bankruptcy estate is a known

7   creditor.

8          THE COURT:  I see what you are saying.

9          MS. MENKES:  So, based on those two issues -- well,

10  there was also another issue.  I had commenced a state court

11  action before I knew of any bankruptcy proceedings.  And it was

12  only through the state court action when I was trying to

13  inquire as to why I was never -- a complaint was never demanded

14  of me cause I served a summons with notice that I hired an

15  investigator and he said they're bankruptcy.

16         THE COURT:  Let me just ask you -- let me probe a

17  little bit on that.  So this a Saint Vincent's hospital?

18         MS. MENKES:  Correct.  Saint Vincent's was the

19  operator and owner of Holy Family Home where the decedent was a

20  patient.

21         THE COURT:  All right.  Did you understand that Holy

22  Name Homes that they were associated with St. Vincent's?

23         MS. MENKES:  Yeah, Holy Family.  There's a state court

24  website that says that St. Vincent's is the operator of Holy

25  Family Home which I do nursing home abuse cases.  I sued the

                SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

9

DAIAAINRO          Order to Show Cause

operator and the facility.

1
2          However, New York State Insurance Law required -- I've
3   cited to that too in my papers -- requires that there is
4   insurance coverage provided and bankruptcy does not absolve the
5   need for this insurance coverage. Therefore, I also did
6   research about if state courts could undertake this decision.
7   And my research clearly indicated from the New York Court of
8   Appeals and many other cases that there's concurrent
9   jurisdiction with state courts. And they can decide the
10  affects of the stay on third parties such as insurers. I was
11  not -- the trustee never conclusively told me on the phone or
12  wrote me letters that there was no insurance. However, she
13  didn't provide me any documentary evidence and this is an
14  adversarial proceeding and that usually is provided. And in
15  addition she never explained why she doesn't have to adhere to
16  the New York State Insurance Law that deems insurance coverage
17  mandatory even if someone, a corporation or entity is in
18  bankruptcy.
19          So I proceeded in state court with an order to show
20  cause to lift the stay up to the level of the insurance policy.
21  In states court it became known conclusively at that point that
22  there was no insurance coverage.
23          I would like to add --
24          THE COURT: That there was no insurance?
25          MS. MENKES: The coverage had been exhausted. Whether

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

10

DAIAAINRO          Order to Show Cause

1  or not there's insurance coverage does not absolve the tort
2  fees of liability. It's just another pocket to pay for the
3  injuries of the plaintiff. If you don't have insurance you
4  have to pay it out of your own pocket. So --
5       THE COURT: But it strikes me as the real sort of the
6  heart of the issue is whether or not the failure to file a
7  notice of claim to essentially put the debtor in or the
8  creditor in line is the critical issue.
9       MS. MENKES: I had asked for that and that was denied
10 as well.
11      THE COURT: I understand. But it strikes me that we
12 don't get to anything else unless you can get a notice of claim
13 somehow on file.
14      MS. MENKES: Right. That's going to be in the appeal.
15 The appeal I am going to argue there was excusable neglect.
16 And I don't think I have to argue the merits of the appeal
17 today. All I have to show here is chance a lot of success.
18      THE COURT: You'd better show a likelihood of success
19 and so you've got to argue enough that it would convince me
20 that the notice of claim that -- what --
21      MS. MENKES: Well, probably --
22      THE COURT: Hold on. I just was stumbling over the
23 phrasing but that the notice of claim should be the failure to
24 file the notice of claim should be excused.
25      MS. MENKES: That's what I plan on arguing in my
            SOUTHERN DISTRICT REPORTERS, P.C.
                   (212) 805-0300

DA1AAINRO                    Order to Show Cause                    11

appeal.

1
2        THE COURT:  Tell me why it should be excused.
3        MS. MENKES:  OK.  There are four prongs for the stay
4   to be in place.  Would you like me to argue that or why the
5   notice --
6        THE COURT:  The notice of claim because I think I
7   understand --
8        MS. MENKES:  The notice of claim there is excusable
9   neglect because the debtor failed.  The debtor has to do due
10  diligence to locate phone creditors and provide them with
11  actual notice of the bankruptcy proceeding otherwise this is
12  the violation of due process.  Elaine Garvey was a known
13  creditor.  She was not provided with any notice, whatsoever,
14  and the bankruptcy held that notice by publication was
15  sufficient.
16       THE COURT:  Let me just -- I just want to pause there
17  and then we'll go on to the other factors but I know that you'd
18  said before that there's case law which holds as a matter of
19  law that an executor is a known creditor.  But how does a
20  hospital understand that every person who died within a
21  facility, does it have to notify every executor?
22       MS. MENKES:  No, it's not the hospital.  It's the
23  debtor's process server has to do due diligence and the
24  hospital's own records.  There's also case law that says in
25  order to perform due diligence a debtor doesn't have to go to

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

12

```
     DAIAAINRO              Order to Show Cause
 1   extraordinary measure but they do have to check their own
 2   records.
 3            THE COURT:  So what would they have checked here that
 4   would have notified them that there was a claim for medical
 5   malpractice?
 6            MS. MENKES:  Well, their own records showed they had
 7   listed him as a creditor.  They had served him after he died.
 8   If they knew he was a creditor their own records would show
 9   that he had left the facility in 2010 and that his next of kin
10   was listed as, and the notices could have been forward there.
11            In addition, Elaine Garvey prior to the bankruptcy
12   sent a HIPAA compliant authorization and asked for his records
13   because for the purposes of litigation.  So, that went to the
14   medical record department.  This service was an invasion of due
15   process and proper service and it eviscerates this Court's
16   ability to hear and determine the issue -- if the stay is not
17   granted it would eviscerate this Court's decision to determine
18   the issues on appeal because there would be irreparable harm to
19   Ms. Garvey because her statute of limitations has now expired.
20   If her case is dismissed in state court if that's dismissed
21   with prejudice, even in this Court hears the appeal and says,
22   and finds that she was correct, she can no longer bring her
23   case ever again.  "Dismissed with prejudice" means that's it.
24   And there is no harm to the trustee.  They've even put in their
25   own papers mechanisms that would prevent any harm to them.  For
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

```
                                                              13
   DAIAAINRO              Order to Show Cause
1  example, I would be in total agreement to stay the state court
2  action, to stay any litigation in the state court action
3  pending the determination of the appeal.
4          And so if you look --
5          THE COURT:  Just and pending the determination of the
6  appeal that would go to --
7          MS. MENKES:  Excusable neglect.
8          THE COURT:  Which would then allow you to file a
9  notice of claim which would then allow you to start and to
10 litigate the state court action and/or get in line and be more
11 procedurally positioned to get a lifting of the stay.
12         MS. MENKES:  Because it's my understanding that the
13 bankruptcy court cannot determine damages.  There's a case -- I
14 don't recall the name offhand but it either has to go to
15 district court or state court.  They can't --
16         THE COURT:  Well, that isn't for today.
17         MS. MENKES:  Yeah.  So if the stay is granted of
18 dismissing her case pending the outcome and determination of
19 the appeal, then if the Court on appeal says, no, she is not
20 entitled, then it can be dismissed but at least she has the
21 right to be heard and have that determination made by an
22 appellate court.
23         THE COURT:  What's your understanding of how long it
24 would take to wind its way, the appeal would take to wind its
25 way through the appellate division or through the district
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
                                                                    14
DAIAAINRO              Order to Show Cause
court?

1
2      MS. MENKES:  Well, it's already been assigned an index
3  number.  It's been assigned a judge.
4      THE COURT:  Who is it in front of?
5      MS. MENKES:  I want to say Judge Glover.  Is there a
6  Judge Glover?
7      THE COURT:  No.  Gardephe?
8      MS. MENKES:  They it had written on my --
9      MS. SCHULTZ:  Your Honor, if I could help?  It's in
10 front of Judge Castel.
11     THE COURT:  Oh, all right.  OK.
12     MS. MENKES:  And so the next step is to get a briefing
13 schedule.  It is my understanding that these appeals go very
14 fast, that we had 14 days to file.  14 days to give us the
15 issues.  Now as soon as we get the briefing schedule we'll get
16 near 14 days to put in the papers.  I would not think that it
17 would take more than a month or two.
18     THE COURT:  All right.  And what's your understanding?
19 And then let me hear from the counsel for the trustees.  What's
20 your understanding of, if you have one, of the timing of the
21 bankruptcy?
22     MS. MENKES:  I don't understand.
23     THE COURT:  When is the bankruptcy proceeding going to
24 be wrapped up?  Are you going to be the last thing that
25 prevents this from being --
               SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
```

DA1AAINRO                    Order to Show Cause                    15

1          MS. MENKES:  I don't know.
2          THE COURT:  OK.  It is not unusual that you don't
3   know.  It's not your bailiwick but I was wondering if you'd had
4   a sense of timing that you'd learned.
5          MS. MENKES:  If she was in line as a creditor she'd
6   get whatever the other creditors were entitled to whatever
7   percentage of the dollar based on --
8          THE COURT:  I just don't know how late in the game
9   she's coming in.
10         MS. MENKES:  I honestly don't know, your Honor.
11         THE COURT:  Let me hear from Ms. Schultz.  You can
12   start where ever you'd like but I would like to get a sense of
13   the bankruptcy proceeding, where it stands, how far along it is
14   and whether or not a quick appeal to Judge Castel really does
15   any significant harm to that process.
16         MS. SCHULTZ:  Sure, your Honor.  I'm happy to start
17   there and then there are a couple of other points I would like
18   to rebut and then some other points I'd like to make.
19         THE COURT:  Absolutely.
20         MS. SCHULTZ:  So, first with respect to where we're at
21   in the bankruptcy process, your Honor, I reported to the
22   bankruptcy court on the 19th of September, which was the last
23   time we were before them and we have 18 liquidated climb claims
24   remaining to resolve.  We have a number of unliquidated claims
25   to resolve as well.  But as soon as we've resolved those

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

DAIAAINRO                Order to Show Cause                          16

1    remaining claims we anticipate being in a position to make our
2    initial distribution using creditors that have been waiting
3    since 2010 to receive a distribution.  And the reality is that
4    if we've got one more large claim, the alleged amount, although
5    there's been nothing but just an allegation contained in the
6    complaint that we were eventually served in the state court
7    action is a ten million dollar claim alleged by Ms. Menkes.
8    And it's a period that straddled the pre and the post petition
9    period.  So we don't know if that's an admin claim, if it is an
10   unsecured claim.  And so the reserve that we would be required
11   to make in connection with that would almost certainly make it
12   impossible for us to recommend the liquidating trustee that
13   they make a distribution to the creditors that have timely
14   filed.

15            THE COURT:  Let me just make sure I understand that
16   the 18 liquidated claims are getting ready to have a
17   distribution paid, there or thereabouts.  And you anticipate to
18   happen in the relatively near future?

19            MS. SCHULTZ:  It's not actually just those.  Those are
20   the claims that remain to be resolved.  It's our entire
21   unsecured creditor body.  So we're talking thousands of claims,
22   literally.  We'll be receiving their initial distribution.  Our
23   goal is to make it during the fourth quarter of 2013.
24            THE COURT:  All right.  Which is in a couple of
25   months.

               SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

DAlAAlNRO                    Order to Show Cause                    17

1          All right.  So now, the reserve that you'd be required
2     on a ten million dollar claim to advise your client to retain
3     would have an impact on all distributions.
4          MS. SCHULTZ:  It would, your Honor, and it would, in
5     fact, potentially determine whether I can make a distribution
6     or not, whether we'd be able to make one.  We need to spend
7     some time, some more time with our -- we have a claims analysis
8     group that helps us with any of these med-mal claims.
9          To the extent that a claim straddles the pre and the
10    post petition period the amount that you would have to reserve
11    for post the petition period is different than the amount you
12    have to reserve for the pre-petition period.  And so we would
13    potentially need to reserve a significant amount pending the
14    resolution of this appeal.
15         THE COURT:  Let me just pause there.  And I am just
16    going to ask some questions as we go, which is what if -- and I
17    am not suggesting that this solves it.  I want to see how much
18    maneuver room there is.  What if Ms. Menkes was able to give
19    some assurance that she would not be seeking for the period
20    that is most troublesome for you?  I don't know if -- I assume
21    it's the pre-period, not the post period.
22         MS. SCHULTZ:  It's the post period actually.  If she
23    was able to give that assurance, your Honor, I think that would
24    help because it would help us with the amount of the reserve
25    that we would need to make.  I am not sure that it solves the

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

18

DAiAAINRO            Order to Show Cause

1    problem.    I know it's --

2        THE COURT:    How much does it help?    Does it allow you

3    to make a distribution?    Does it take away that?

4        MS. SCHULTZ:    It might.

5        THE COURT:    So let me go with number two.    So one

6    thing is if Ms. Menkes is able to say that the pre-period is

7    what she is looking for and the not post period that then

8    solves part of the problem.    What if she's also able to say

9    that after three years of looking at these records she's not

10   looking for ten million dollars, she's really looking for two

11   million or $1.5 million maximum and that therefore that also

12   then helps bring down the amount that we're talking about, does

13   that then help you?

14       MS. SCHULTZ:    If she was able to give a more refined

15   request and demand, that would help, yes.

16       THE COURT:    All right.    Now, let me turn to

17   Ms. Menkes.    Are you able to do either of those two things

18   because if you are it sounds like the major point that the

19   trustee is making which is a significant one is that you could

20   otherwise be a hold up to any distributions.

21       MS. MENKES:    Your Honor, that ten million would be ad

22   damnum and they're usually very large.    I could easily adjust

23   this down and would be willing to even settle with their claims

24   people rather than go through long and protracted litigation.

25       THE COURT:    That I can't deal with as part of the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

DAIAAINRO                    Order to Show Cause                    19

1   proceeding today.

2        MS. MENKES:  The answer is, yes, I definitely can

3   decrease the ad damnum clause.

4        THE COURT:  Can you get it down to 1.5?

5        MS. MENKES:  Yes, I can.

6        THE COURT:  And then an ad damnum.  And then can you

7   say the post period is not an issue?

8        MS. MENKES:  The post -- well, he left the facility

9   pre-petition.

10        THE COURT:  Yeah, so?

11        MS. MENKES:  So.  He died pre-bankruptcy.  He died in

12   June 2010.

13        MS. SCHULTZ:  The bankruptcy was filed in April, your

14   Honor.

15        THE COURT:  He died in June.  The bankruptcy was filed

16   in April of '10?

17        MS. SCHULTZ:  Um-hmm.

18        THE COURT:  It is a post petition filing.

19        MS. SCHULTZ:  It's a post petition pre-confirmation

20   claim and I think, perhaps, that's the confusion.

21        THE COURT:  I right.  So how does that, Ms. Schultz,

22   impact things?  So, we can get the ad damnum down to a much

23   lower level does that help you in terms of the reserve, you

24   know for the post period?

25        MS. SCHULTZ:  It does help.  What I was going to say,

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

DA1AA1NRO                Order to Show Cause                          20

1    your Honor, I know it's difficult when you think of an
2    organization that's as large as St. Vincent's and everybody
3    assumes that the kind of cash we are sitting on is hundreds of
4    millions of doors.  It's not.
5            THE COURT:  I don't make that assumption.
6            MS. SCHULTZ:  It's a bankrupt entity and we're doing
7    the wind down.  The reality is the amount that the estate is
8    sitting onto be distributed is ten to $15 million, not hundreds
9    of millions.  So it certainly helps.  I would need to sit with
10   the trustee to determine if that got us to where we could make
11   a distribution but it definitely gets us much closer to being
12   able to make one to have that amount down.
13           THE COURT:  All right.  Go ahead and make your other
14   points.
15           MS. SCHULTZ:  Okay.  One point that I'd like to
16   clarify and I think this is important because Ms. Menkes
17   asserted that she was going to argue in the context of her
18   appeal that she had mapped what we in the bankruptcy parlance
19   call the Pioneer standard which is the standard for filing a
20   late filed proof of claim, Judge Morris was very clear at the
21   September 19 hearing -- and I'm reading from the transcript on
22   page 61 on 22.
23           THE COURT:  But Ms. Schultz, if you do read you have
24   to slow down.
25           MS. SCHULTZ:  I am sorry.  Just so you know, a late
             SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

21

DA1AAINRO          Order to Show Cause

1   proof of claim or a proof of claim has never been argued.  It's
2   not been decided.  It has not been ordered.  And I note that
3   only that Ms. Menkes still has that available.  She's never
4   made that motion before the bankruptcy court.  If her
5   contention is that she should be able to file a late filed
6   proof of claim and assert a claim against the bankruptcy court
7   she needs to go to Judge Morris and file a motion that
8   establishes that she's met the Pioneer standard which is the
9   standard for filing a late filed proof of claim.  And I think
10  Judge Morris was very clear that she's not determined that yet.
11          THE COURT:  All right.  So let's just pause right
12  there.  That suggests if you are right, Ms. Schultz, a reason
13  to grant a temporary stay because it would be suggestive of a
14  motion which could be made which has not been decided upon by
15  the bankruptcy court but cannot be if the action is dismissed.
16  Because what we're dealing with on the one hand as I understand
17  it but tell me if your view is different from this, is that
18  I've got Ms. Menkes arguing that if she is required to go
19  across the street and dismiss her claim with prejudice, it is
20  gone forever and creditor Garvey has no longer has a claim and
21  she would have no standing therefore to go to the bankruptcy to
22  make such a motion.  So I think that unless a stay is issued
23  she could never make the motion you've just described.
24          MS. SCHULTZ:  Respectfully I disagree.  So I think
25  that she is prohibited from going before the state court, your

                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

22

```
DAIAAINRO        Order to Show Cause
 1  Honor, and seeking to go after insurance which does not exist.
 2  But she is not prohibited from seeking to file a proof of claim
 3  before the bankruptcy court which would be liquidated as a
 4  claim against this entity. And if the bankruptcy court says
 5  yes, you've met the Pioneer standards, you've established
 6  excusable neglect with respect to your client's failure to
 7  timely file a proof of claim --
 8        THE COURT:  But how -- tell me this, if you've got a
 9  medical malpractice related claim as to which the damages, if
10  any, or the liability first and then the damages, if there is
11  liability, flow from a determination, judicial determination of
12  some sort, how do you file a proof of claim that has a sum
13  certain attached unless you have such a proceeding? I suppose
14  you can file the ad damnum amount but you've got to get
15  yourself down to an actual amount.
16        MS. SCHULTZ:  We have a procedure for that. So we
17  have a court approved procedure that would require then us to
18  go through a series of offers first. It begins with
19  liquidating trustee sending the plaintiff an offer. The
20  plaintiff responds in writing. Liquidating trustee then has
21  one more option to respond. If the parties don't reach
22  settlement we then automatically go to mediation because we
23  recognize the bankruptcy court's inability without the consent
24  of the parties to enter an order adjudicating a personal
25  damages claim. We go to mediation. There are, there's three
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
```

23

DAIAAINRO          Order to Show Cause

1    or four mediators that were approved. The plaintiff gets to
2    select the mediator. At the conclusion of the mediation, if
3    the mediation is unsuccessful then the plaintiff has the
4    discrimination to either have the claim estimated by the
5    bankrupt court or we can go to district court.
6         THE COURT: District court?
7         MS. SCHULTZ: Federal court.
8         THE COURT: Yes. But not on a med-malpractice claim
9    but on the bankruptcy issue.
10        MS. SCHULTZ: On the determination of amount of the
11   claim which would require the district court to look at the
12   claim and say this is the appropriate amount and this is how
13   much you're entitled to assert against the estimate.
14        THE COURT: All right. So it's almost like a
15   med-malpractice claim within a claim. You're making it through
16   a bankruptcy proceeding and it would be sort of an appeal to
17   the district court but it would be effectively making a
18   med-malpractice determination.
19        MS. SCHULTZ: That's correct, your Honor.
20        THE COURT: All right. So let me then make sure I
21   understand the point which is that the gating factor to the
22   procedure that you've just described which would be an
23   alternative route to coming up with an amount, if any, is
24   appropriate requires, first, that a motion be made to the
25   bankruptcy court for excusable neglect and that a late notice
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300