24

```
      DAIAAINRO        Order to Show Cause
 1   of claim then be allowed to be filed.
 2       MS. SCHULTZ: That's correct, your Honor.
 3       THE COURT: So there has to be a successful motion
 4   before the bankruptcy court first.
 5       MS. SCHULTZ: That's correct, your Honor.
 6       THE COURT: OK. What's the likelihood of that to you?
 7       MS. SCHULTZ: I think, frankly, it's highly unlikely
 8   because we are two plus years past the applicable bar date.
 9   Judge Morris has listened to a number of parties who have
10   asserted that they meet the Pioneer standard. She's put forth
11   some very careful decisions in the St. Vincent's case and in
12   other cases outlining what you must do in order to meet the
13   Pioneer standard. And based on my experience in front of her,
14   as well as my experience in front of other judges in the
15   Southern District, I think it unlikely that this particular
16   case would meet the Pioneer standards.
17       THE COURT: How about the point that service on a
18   decedent is a nullity?
19       MS. SCHULTZ: Let me first -- that was the next point
20   I wanted to address. So, first Ms. Menkes referenced us to
21   Erie. Erie is only applicable if the Court is sitting in
22   diversity jurisdiction. The bankruptcy court is not sitting in
23   diversity jurisdiction, so we don't think Erie is applicable.
24       Second, we have read all the cases that were in her
25   pleadings and after I do this, I'd like walk you through sort
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

DAIAAINRO          Order to Show Cause                              25

1   of what is required under the bankruptcy code for notice. I
2   think that will be helpful.
3        The cases that Ms. Menkes cited as we read them really
4   stand for the proposition that a cause of action survives if
5   plaintiff's or defendant's death under New York State law and
6   that proper substitution should occur prior to any dismissal of
7   an action. They don't really stand for the proposition as we
8   read them that service on a decedent is a nullity.
9        But I think what would be helpful --
10       THE COURT: Although it would stand to reason that if
11  you served a dead person --
12       MS. SCHULTZ: It would stand to reason although you
13  know Ms. Menkes already asserted that the debtor's files
14  contained an address for their next of kin. I'm holding in my
15  hands the admissions form which is one of the documents that
16  was before the bankruptcy court. It has no address for
17  Ms. Garvey.
18       THE COURT: Let me ask you, does the -- why did the
19  trustee have the decedent on a debtor -- a creditor list?
20       MS. SCHULTZ: The way the process works, when you
21  gather parties that you are going to serve it was not because
22  the trustee necessarily believed that they were a known
23  creditor -- which is at an important distinction and I'll come
24  to that. When you go back and you generate the list of parties
25  that you are going to serve in bankruptcy parlance, what I tell

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

Case 1:14-cv-03293-PKC   Document 8-4   Filed 06/13/14   Page 3 of 23

DAIAAINRO                Order to Show Cause                          26

1   my clients when I represent the debtor and I didn't represent
2   the debtor.  I represented the committee and now represent the
3   trustee.  I wasn't in control of the actual service.  I tell
4   them we are going to serve every one and their mother and their
5   brother and the kitchen sink and that's the process that you go
6   through.  So you pull your accounts payable.  You pull your
7   accounts receivable.  You pull them for a set period of time.
8   And you serve everyone that you have in your accounts payable
9   and your accounts receivable.
10      So I can't as I stand here today -- and it would be
11  impossible I think for me to identify for you -- Mr. Brophy was
12  on this list because of reason "X".  But what I can tell you is
13  that just because someone appears on that list does not mean
14  that it's because we believe that that person was owed money.
15  We do it out of an abundance of caution and you serve them on
16  whatever address you have in your records.
17      THE COURT:  Let me ask you, as you stand here,
18  Ms. Schultz, today are you aware of any facts which indicate
19  that your client had any notice of a medical malpractice claim
20  by the decedent?
21      MS. SCHULTZ:  No, your Honor.  And you in fact Judge
22  Morris -- and I am sure you've read the transcript -- did a
23  careful review of the documents and she cited a number of cases
24  and we cited a number in our papers, each of which say that
25  just because two years before the Chapter 11 cases initiated

                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

27

DAIAAINRO          Order to Show Cause

1   and the bar dates began to be served up, just because we
2   received a request for medical records, does not make that
3   person a known creditor.
4          Lots of people send requests. Lots of people say that
5   they think this there's been negligence. Lots of people
6   threaten litigation. That does not in and of itself under the
7   applicable case law make a party a known creditor because
8   hundreds of people send those requests. Hundreds of people
9   make threats. Very few actually initiate litigation.
10          THE COURT: And when you, Ms. Schultz, let me ask it
11  differently. When the process was undertaken here to give
12  notice to potential creditors were individuals who had sent in
13  requests for medical records included as part of the kitchen
14  sink?
15          MS. SCHULTZ: No, your Honor, they weren't. And the
16  reason that they weren't, those requests -- just to help you
17  understand the process -- they go to a clerk. If a notice of
18  demand or a notice of complaint or a notice of claim had been
19  sent a separate letter that said we're initiating litigation.
20  You send it to an officer. You send it to a director. You
21  send it to the head of the nursing home. You send it to the
22  head of the hospital. That pay have generated putting the
23  insurance company on notice which would have resulted in that
24  person becoming what we would refer to in bankruptcy parlance
25  as a known creditor and they would have been included.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

28

DAIAAINRO          Order to Show Cause

1   But if we were to try to distill every single person
2   that sends a request for medical records and maintain a list
3   and keep that, that would be impossible. We get probably 50
4   requests a week because patients have moved, patients are
5   seeing a new doctor. You can imagine a lot of the reasons why
6   there would be a request for a copy of medical records coming
7   from a nursing home.
8              THE COURT: All right.
9              MS. SCHULTZ: With respect to the issue of notice
10  because I think this is important -- I am not going to go
11  through all the facts other than to say that we don't agree
12  with everything that she said and I don't think for today's
13  purposes it's dispositive.
14             The supreme court has provided some very clear
15  guidance with respect to what notice is required in the context
16  of a Chapter 11 case and with respect to -- In Mullen v.
17  Centennial Hanover Bank and Trust Company, which is at 339 U.S.
18  360, the bankruptcy court held that to satisfy the due process
19  requirements notice must be reasonably calculated under all
20  circumstances to apprize interested parts of the pendency of
21  the action and afford them an opportunity to present their
22  objection.
23             In the context of a Chapter 11 case, courts in the
24  Second Circuit have held this requires that a creditor receive
25  reasonable notice at the initial filing and of the bar dates.

                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

29

DAIAAINRO              Order to Show Cause

1    To achieve this, a debtor must send actual notice of a bar date
2    to a known creditor while constructive notice generally --
3    publication notice is sufficient with respect to an unknown
4    creditor.

5         Whether a creditor is known or unknown is guided by
6    several principles.  Specifically, your Honor, I've referenced
7    the court to XO Communications.  In this case the court said a
8    known creditor is one whose identity is actually known by the
9    debtor and any claimant whose identity is reasonably
10   ascertained.  That's at 301 BR 793 Bankruptcy Court Southern
11   District New York 2003.
12        As noted by the Court in In Re: Crystal Oil which is a
13   Fifth Circuit case, to be a known creditor a debtor must have
14   in its possession at the very least some specific information
15   that reasonably suggests both the claim for which the debtor
16   may being liable and the entity to whom it will be liable.
17        In contrast, an unknown creditor is one whose claim is
18   merely conceivable conjecture or speculative.  In the case at
19   hand the only --
20        THE COURT:  I am sorry, Ms. Schultz.  The unknown is
21   conceivable --
22        MS. SCHULTZ:  Conceivable, conjecture or speculative.
23        THE COURT:  All right.
24        MS. SCHULTZ:  So in the case at hand the only
25   indicator as we've discussed today that the debtors had, the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

30

DAIAAINRO          Order to Show Cause

1   movant was a known creditor at the time that the bar dates were
2   issued were two letters requesting copies of medical files.
3   Those medical files were provided.  The movant asserts that
4   because she issued these requests where she advised that she's
5   been retained to investigate claims of nursing home abuse and
6   neglect, that occurred while Ronnie Brophy was a resident that
7   Mr. Brophy was a known creditor.  However, as noted by this
8   court in Victory Memorial Hospital which is at 435 BR 1
9   Bankruptcy Court Eastern District of New York 2010, a mere
10  request for medical files is not sufficient to render a party a
11  known creditor.  Records can be requested, as we've discussed,
12  for a variety of reasons.
13       As noted by Judge Morris and as held in In Re: Trump;
14  Taj Mahal Associates, the creditor who like the movant in our
15  case, sent a letter to the debtors requesting a possible claim,
16  was not known -- regarding a possible claim was not a known
17  creditor, as many people threaten to file suits although only a
18  nominal number actually bring them.
19       THE COURT:  Well, let me ask because I think that
20  somewhere between the two arguments that you folks have made
21  I've lost the heart of the appeal that would be the appeal that
22  Judge Castel would hear.  As I understood it, he was going --
23  the issue was going to be -- and that's set forth I think in
24  Paragraph 11 Page six of the papers was that Garvey was a known
25  creditor.

            SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

31

DAIAAINRO          Order to Show Cause

1   But I also -- is that right, Ms. Menkes, that's the
2   heart of the appeal?
3       MS. MENKES:  Well, the heart of the appeal is that
4   Garvey was a known creditor and that the decedent was served
5   after he was dead.  I have a lot of rebuttal.
6       THE COURT:  I understand and then I'll let you have a
7   moment but I just wanted to make sure that I understood because
8   it also sounds like those arguments are going to be made but
9   they are going to be made out of the context of an appeal of an
10  adverse determination of a notice of an excusable neglect
11  determination.
12      MS. MENKES:  Excusable neglect is going to be argued
13  because even though Judge Morris said in his transcript it was
14  argued in the August motion.  And so that was --
15      THE COURT:  Although she says in her transit that
16  she's not deciding it.  So whether or not it may have been
17  raised, she did not reach a determination.  So you don't have
18  an adverse determination from which you would be appealing.
19      MS. MENKES:  Well, in that case then that's another
20  reason, as you said, I would definitely need a stay.  I was
21  under the impression that this was argued but Judge Morris was
22  very offended that I went to state court even though my
23  research showed me that it was a viable option.  And I went
24  there believing that there was insurance coverage.
25      But I just want to say, your Honor, arguing the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

32

DAIAAINRO          Order to Show Cause

1  appeal, we are starting to argue the merits of the appeal which
2  is not what we should be doing here.
3       THE COURT:  The one thing that we do have to do is
4  understand the likelihood of succes on the merits.  And that is
5  in Paragraph 11 it does turn on this known creditor issue.
6       MS. MENKES:  And as well as serving the decedent who
7  was dead because Erie v. Thompkins does -- it states it was a
8  diversity case but it says a federal court sitting in a state
9  must go by that state's law.
10      THE COURT:  Sitting in diversity.
11      MS. MENKES:  The trustee does not offer any
12 alternative service or process statutes.  And it is my
13 understanding there are no federal service of process statutes
14 because this is a state law substantive matter.  If you serve
15 in a state you'd have to go by that law.  And in terms of --
16      THE COURT:  Let me hear the rest of what Ms. Schultz
17 has to say and then we'll come back to you.
18      MS. MENKES:  I apologize.
19      MS. SCHULTZ:  Thank you, your Honor.
20      As Judge Morris determined -- and I understand we're
21 not here to argue the merits of the appeal -- but Judge Morris
22 made a very carefully reasoned decision.  She did not abuse her
23 discretion we do not believe when she determined that based on
24 the laws and the facts as they are before her, were before her,
25 that Ms. Garvey and Mr. Brophy were unknown creditors to this

          SOUTHERN DISTRICT REPORTERS, P.C.
                  (212) 805-0300

33

```
              DAIAAINRO              Order to Show Cause
1  estate.  But in this case, your Honor, the analysis doesn't
2  stop there.  While we believe that they were unknown creditors
3  as has been stated and is evidenced by the service that were
4  serviced filed with bankruptcy court, Mr. Brophy was served at
5  the last known address, the address that the debtors had in
6  their books and records.
7        As the bankruptcy court discussed and is noted in In
8  Re: v. Fashion which is noted at 224 BR 426 Southern District
9  of New York, when evaluating service the noticing party must
10 use reasonable diligent effort which does not mean that the
11 noticing party must conduct practical and extended -- in the
12 names due process.  Instead reasonable diligence involves --
13 focus on the debtors own books and records.
14        THE COURT:  All right.  Lets just stop for a moment
15 because Mr. Brophy it sounds like is both a known creditor or
16 something and we're not sure what.  But he was somehow on the
17 books, on the trustee's list of known creditors.  But he also
18 was an unknown creditor.  Do I have that right?  Because it
19 sounds like you folks did serve him as a known creditor in the
20 bucketed of known creditors.
21        MS. SCHULTZ:  We served him the bucket of potential
22 creditors, not necessarily known creditors.  Just because
23 during the last three years you were on the accounts payable or
24 the accounts receivable doesn't mean on the day that we filed
25 you were, actually, a creditor that you were, actually, owed
                 SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300
```

```
DAlAAINRO          Order to Show Cause                      35

 1      MS. SCHULTZ:     That's correct, your Honor.
 2      THE COURT:  All right.  So the notice of claim is a
 3  gating factor as to which the issue of constructive versus
 4  actual notice is critical.
 5      MS. SCHULTZ:  I believe that it is, yes, your Honor.
 6      THE COURT:  OK.  What other points do you need to
 7  make?  Let me ask you one more thing.  The issue here as to
 8  whether or not to issue a stay is not only the factors that go
 9  into a stay but the likelihood of success prong also,
10  obviously, incorporates the abuse of discretion whether or not
11  the bankruptcy judge abused her discretion in applying and in
12  making her initial determination as to the likelihood of
13  success.  So, whether or not I would come out the same or
14  differently is different from whether or not there's been a
15  showing of an abuse of discretion.  Would you agree with that
16  proposition.
17      MS. SCHULTZ:  We would agree with that, your Honor.
18      THE COURT:  All right.
19      MS. SCHULTZ:  The only other point that I would like
20  to make, your Honor, is – and then I'll cede the podium.
21      Ms. Menkes has spoken a little bit about the sanctions
22  provisions that were contained in the underlying order that was
23  entered in August.  Those were late to the state court
24  proceedings.  Your Honor, I am not sure those are really ripe
25  as we sit here today.  Just to give you a little bit of history
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
```

36

```
     DAIAAINRO            Order to Show Cause
1    on how that all unfolded.  At the August 15th hearing Judge
2    Morris indicated that she was going to award fees in light of
3    certain actions that had occurred.  She asked us to provide a
4    statement as being liquidating trustee with respect to our
5    fees.  We've provided those.  There was a hearing on
6    September 19th.  She asked in response to some filings that had
7    been made for additional information, both from my firm and
8    Ms. Menkes.  Those documents, at least from my firm, have been
9    submitted.  I'm not sure if Ms. Menkes had an opportunity to
10   submit hers not.  And that issue in the actual award of the
11   amount of fees is not going to be heard until November.  The
12   actual award of the amount of the fees will not be heard until
13   November.  So I'm not sure if that issue is even ripe right now
14   as we sit here today.
15        MS. MENKES:  That issue is not before the Court.
16        THE COURT:  All right.  Well, in any event, then you
17   both agree.
18        MS. SCHULTZ:  Yes.
19        THE COURT:  We don't have to deal with that.
20        MS. SCHULTZ:  Great.
21        THE COURT:  Ms. Menkes, I want to just focus on one
22   particular issue.  In my view in order for me to issue a
23   temporary stay I have to determine that Chief Bankruptcy Judge
24   morris abused her discretion in making her determination that
25   inter-alia, the state court action should be dismissed because
```

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

DAIAAINRO                Order to Show Cause                    37

1    there's no notice of claim and there was constructive notice
2    provided, etc. And I am finding the argument that Ms. Schultz
3    has put forward persuasive on the point that showing excusable
4    neglect is going to be difficult but even so, based upon the
5    careful and the thorough job that Chief Judge Morris did, how
6    do I say that she abused her discretion here?
7         MS. MENKES: Well, your Honor, first of all, I don't
8    believe that you have to come to that conclusion.
9         THE COURT: Not to show a likelihood of it though.
10        MS. MENKES: The cases that Ms. Shultz cited and that
11   Judge Morris cited in her decision are not on point. A
12   disparate from the issue at hand, none of them deal with
13   decedent whose been dead two years. None of them deal with the
14   New York State law service of process. None of them deal with
15   the fact that the bankruptcy cases hold that an estate is a
16   known creditor.
17        Ms. Schultz said that the decedent was both known and
18   unknown. There's no case law that says you can be known and
19   unknown. Either you are known or you're unknown. There is no
20   overlying circle that you can be both. The service of process
21   on Brophy was -- if you excuse my language -- in normal
22   parlance is called sewer service. It just is serving everybody
23   and every place but the debtor has certain obligations.
24        THE COURT: Well, what Ms. Schultz argues is -- this
25   is where I made the point about Mr. Brophy was both a known

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

38

DAIAAINRO          Order to Show Cause

1    creditor but also unknown, that he -- it does appear as if his
2    medical malpractice claim was unknown.
3              MS. MENKES:  We don't know that.
4              THE COURT:  Well, you would be the one who would know
5    it since you were hired a month after he died.
6              MS. MENKES:  They don't know where either why he was
7    on their list.
8              THE COURT:  But that's not enough right now to survive
9    the -- I mean, that seems to fall within the conceivable.  So
10   for an unknown claim, the claim can't just be conceivable which
11   it sounds like it was.  You have to have, to be a known
12   creditor the debtor has to have some specific information as to
13   whom the debt is a owed and for what.
14             MS. MENKES:  Well, he was on their list of service, so
15   they must have the -- they're not coming forth with the
16   specific information.  But and nevertheless, he was served.
17             THE COURT:  I am saying it is conceivable.  But how do
18   we get from conceivable to known?  Because conceivable --
19             MS. MENKES:  He was known.  I actual -- they argued
20   against me.  I argued that a known creditor is entitled to
21   actual notice.  And in opposition they put forth these
22   affidavits of service which I sought for the first time and in
23   the motion papers in the underlying action.  They argued that
24   he was a known creditor and he got actual notice.  Then I said
25   he was dead two years.  Now we're in a different position
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300

39

DAIAAINRO                 Order to Show Cause

1   because New York State Law CPLR 1015, specifically, holds that
2   you cannot serve a dead person.  And there's case law that
3   supports this.  I can cite it from my papers if I can find it.
4        And Judge Morris would not let me argue those points
5   and she was very -- I think, I understand the corporate
6   structure and bankruptcy law and I think there's more of a
7   emphasis on this point in getting a smooth resolution of this
8   case rather than letting someone come in at this point that's
9   going to throw a wrench in the whole thing.  But Judge Morris
10  was very offended that I went to state court even though my
11  research said that was an appropriate forum and even though I
12  had no indication, conclusive indication that there was no
13  insurance in state law mandated that there was.
14        And it's been my experience that when a debtor is in
15  bankruptcy there's usually a stipulation to proceed with a
16  state action up to the limits of the insurance policy.  I am
17  looking for my citations for CPLR 1015.  (Multiple cases cited)
18        THE COURT:  Yeah.  I actually think though that there
19  are -- this is where I keep coming back to the point of the
20  medical practice claim being an unknown claim.  And I
21  understand what your arguing, Ms. Menkes, is that this fellow
22  shows up for some reason on a list that the trustee has.  They
23  serve him with sewer service, however characterized, I
24  understand that they were serving a decedent at a decedent's
25  last known address.  So one could argue whether that could be

                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

```
DAIAAINRO          Order to Show Cause                    40
 1  effective unless you've got a Ouija board.  But the issue that
 2  we have here is whether or not you're ultimately going to be
 3  able to show that the constructive notice was, as a matter of
 4  law, ineffective --
 5          MS. MENKES:  Well, you can't have constructive noticed
 6  on a dead person either.
 7          THE COURT:  -- in appropriate.  Well, the constructive
 8  notice was not on him.  It's going to be on the executor or
 9  representative of the estate.
10          MS. MENKES:  The case law that Ms. Schultz cited a
11  very general.  But there is specific case law that I've cited
12  to in my papers, bankruptcy law that holds the estate is a
13  known creditor.  Ms. Garvey was the estate.  She was the
14  administrator of the estate.
15          THE COURT:  Now, is the estate -- it cannot be the
16  case.  I wouldn't think that every patient that was at this
17  nursing home that was associated with St. Vincent's that the
18  estates of those individuals who passed away just before,
19  during and just after, but prior to the finality of the
20  bankruptcy proceeding are known creditors.  It's got to be the
21  case that what that must mean is that a known -- that when you
22  have a known claim that the estate steps into the shoes of the
23  known creditor there.
24          MS. Schultz, is that --
25          MS. SCHULTZ:  Yes, your Honor, that's correct.  If a
         SOUTHERN DISTRICT REPORTERS, P.C.
                (212) 805-0300
```

41

DAIAAINRO          Order to Show Cause

1  bankruptcy estimate when required to go through and look at
2  every party who had died during the approximate period that you
3  had just described, that would be a Herculean effort that in
4  and of itself may exhaust all of the resources of the estate --
5  no recovery for creditors.
6          MS. MENKES: There is no case law that says debtor
7  don't have to go through -- the case law that says they don't
8  have to do unreasonable effort to locate creditors. However,
9  all the case law says they have to look at their own books and
10 records. The debtor served themselves at their own facility.
11 Their own books and records would indicate this man had died.
12 Therefore, it wasn't proper service.
13         But I do want to point out one thing, your Honor.
14 This case In Re: JA Jones Inc. 492 F.3d 242 Fourth Circuit
15 holds that an estate is a known creditor, whereas here, careful
16 examination of the debtors own books and records would have
17 alerted the debtor to the possibility that the claim right
18 reasonably filed against it by the estate.
19         So, in this case an estate is a known creditor and all
20 the other cases about known and unknown. They're very general
21 premises. You can take a case with general premises and lay
22 down very general law but when you drill down in these cases
23 you see there's different circumstances arise and different
24 situations. There is a very good chance on probability or
25 possibility on appeal that this will be granted. As a matter

          SOUTHERN DISTRICT REPORTERS, P.C.
                  (212) 805-0300

42

DAIAAINRO                    Order to Show Cause

of fact --

1    THE COURT:  But let's take an alternative route.  The

2  alternative route is that the state court action is dismissed.

3  You go back to which would moot the appeal in front of Judge

4  Castel, I would assume.  You go back to bankruptcy court.  You

5  file a motion for a late notice of claim on the basis of

6  excusable neglect.  Let's assume for the moment it's been

7  denied.  Based upon similar reasoning that was used as to the

8  issues here.  That then does leave the opportunity for an

9  appeal to the district court on the same bases, largely, as

10  what you are arguing right now.  In other words, you'd be

11  arguing known versus unknown and you'd be arguing whether the

12  excusable neglect standard had been met.  So, you'd be able to

13  pursue those.

14    And if you are correct that there is a likelihood that

15  the district court would reverse then you would get a reverse

16  back down to the bankruptcy court.  You'd get a notice of claim

17  and then could undertake the proceedings that Ms. Schultz has

18  described.  Why isn't that sort of at least an alternative that

19  gives you a second pathway so that you're not DOA if you have

20  to dismiss your state court action.

21    MS. MENKES:  Because I am positive it'll be denied as

22  is Ms. Schultz.

23    THE COURT:  But you can come up -- then can you appeal

24  that decision to the district court.

25    SOUTHERN DISTRICT REPORTERS, P.C.

    (212) 805-0300

```
                                                              43
         DA1AAINRO            Order to Show Cause
    1         MS. MENKES:  But no underlying action, where will the
    2    damages be liquidated?
    3         THE COURT:  Because Ms. Schultz has said there is
    4    answer entire process -- If I've got it right not, I am relying
    5    upon the fact that if there was a duly issued notice of claim
    6    for the ad damnum amount which currently is ten million.  We've
    7    talked about 1.5 but it's currently ten million is the ad
    8    damnum amount, that as duly issued notice of claim would then
    9    go through a procedure whereby there would be discussions
   10    attempting to the resolve it, mediation and then ultimately a
   11    process which could itself sever be appealed to the direct
   12    court.
   13         MS. SCHULTZ:  Yes, that's correct, your Honor.
   14         MS. MENKES:  I would just like to say, your Honor,
   15    that my client has a Constitutional right to a jury trial, that
   16    it's my experience in handling these cases that I've gone
   17    through mediation but if there's no jury trial looming in the
   18    horizon, there is really no resolution of these issues.  And I
   19    don't know why the state court action then could not be stayed
   20    until this route is exhausted.  I have no interest in
   21    proceeding with the state court action.  I just would like it
   22    to be stayed and nothing further done.
   23         THE COURT:  I hear you, Ms. Menkes.  I think that
   24    you -- I am going to rule.  And I'm going to deny the
   25    application for a stay and require that you comply with Chief
                         SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```

44

DAIAINRO          Order to Show Cause

1   Judge Morris' order.
2        The reason for that is -- there are a number of
3   reasons. One, there is a -- I do not find that Judge Morris
4   abused her discretion and her underlying finding that there's a
5   likelihood that it will be shown that she abused her
6   discretion. I believe that the irreparable harm here is really
7   on -- there is a harm on both sides in irreparable harm not
8   necessarily on either side.
9        In terms of the creditor, while the state court action
10  would be gone and the statute of limations would be run and
11  that will occur, there is still an unexhausted route before the
12  bankruptcy court of filing a motion for excusable neglect to
13  get a late filed notice of claim. That, if it's denied, can
14  then be appealed to the district court. The various issues
15  relating to whether or not the excusable neglect should have
16  been found, including whether or not the debtor was a known
17  creditor -- I'm sorry -- of whether Ms. Garvey was a known
18  creditor could be argued and those points could then be raised.
19  And if the district court then found that there was error below
20  then it would send it back to the bankruptcy court. If a
21  notice of claim then issues then there's a procedure that
22  Ms. Shultz has described which would allow for the resolution
23  of the claim ultimately.
24       In addition, there is real harm to having a lack of
25  finality to this very large estate that has got numerous

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

45

DAIAAINRO          Order to Show Cause

1  claims, some unliquidated, some liquidated where there's a
2  distribution in the offing.  And this action which is a major
3  reason to look at it so closely, this action could prevent and
4  be a gate between resolution of this bankruptcy proceeding in a
5  timely way and hold it up.
6          So it does appear also that on the merits it is more
7  likely than not that this Mr. Brophy was an unknown creditor
8  because while his claim may well have been at best conceivable
9  under the legal standard, it is clear that the debtor did not
10 have specific information as to the claim and to whom the claim
11 was for and for what it is for.  If it turned out that he was
12 on the list because St. Vincent's had self-reported medical
13 malpractice, that is something as to which the trustee is
14 unaware and something that I think is relatively farfetched.  I
15 have no idea why this individual was on a creditor list.  But I
16 do think take the trustee's proposition that everybody and the
17 kitchen sink is served.  Therefore, I think it is more likely
18 than not that actual notice would not be required and that
19 constructive notice to the unknown creditor would be sufficient
20 which was made and that therefore that is a likely outcome.
21          I also think that there is public policy favoring the
22 finality of a bankruptcy proceeding, particularly, when there
23 is an alternative here where the notice of claim procedure, the
24 excusable neglect procedure with an appeal route of the
25 district court can be taken advantage of.  And based upon all

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

DA1AAINRO          Order to Show Cause                                    46

1    of the factors that are before the Court, the case law that's
2    before the Court in terms of how the cases are read, the Court
3    does credit Judge Morris' rationale and does as a result of
4    that deny the motion for the temporary stay.
5         So I believe that that means that the state court
6    action should be dismissed with prejudice today, October 1st,
7    and that then the appeal before Judge Castel is moot and then
8    you can take whatever further action you believe is appropriate
9    in the bankruptcy court.
10        MS. MENKES:  Your Honor, I can't dismiss it today.  I
11   have no time.  I can do it tomorrow.  I can't do it today.
12        THE COURT:  All right.  There will be no stay.  So I
13   am Part One judge tomorrow too.  So dismiss it tomorrow and
14   that would be in compliance by close of court tomorrow.  That
15   will be in compliance with Chief Judge Morris' order.  And we
16   may see you again as you go back to the process of the notice
17   of claim process with Chief Judge Morris.  And if you then
18   appeal to the district court you'll be assigned to another
19   district court judge.
20        Is there anything further that we should do?
21        MS. SCHULTZ:  Your Honor, we would request that
22   Ms. Menkes provide us with evidence of such dismissal.
23        MS. MENKES:  I have no problem.
24        THE COURT:  All right.  She'll provide you with such
25   evidence.

                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

47

DA1AAINRO        Order to Show Cause

1         All right.  This matter is terminated and we are
2    adjourned.  Thank you.

3              (Adjourned)

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300