UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re:                                                    14-cv-3293 (PKC)

SAINT VINCENT'S CATHOLIC MEDICAL
CENTERS OF NEW YORK, et al.,                              Chapter 11 Case No.
                                                          10-11963 (CGM)
                            Debtor.

-----------------------------------------------------------x
ELAINE GARVY, as Administrator of the Estate
 of Ronald Brophy,

                            Appellant,

               -against-                                  MEMORANDUM
                                                          AND ORDER
EUGENE I. DAVIS, LIQUIDATING
TRUSTEE FOR THE SVCMC LIQUIDATION
TRUST,

                            Appellee.

-----------------------------------------------------------x

CASTEL, District Judge:

> USDS SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 7/16/14

       Sheryl Menkes, counsel for a purported creditor of the bankruptcy estate of Saint

Vincent's Catholic Medical Centers of New York ("SVCMC") and one of its affiliates, appeals

from the bankruptcy court's March 21, 2014 Memorandum Decision Imposing Sanctions (the

"Decision"). The Decision ordered her to "satisfy personally the excess costs, expenses, and

attorneys' fees reasonably incurred because of" her conduct of the litigation, pursuant to 28

U.S.C. § 1927. In re St. Vincent's Catholic Med. Centers of New York, 506 B.R. 387 (Bankr.

S.D.N.Y. 2014) (Morris, C.J.). For the reasons that follow, the order of the bankruptcy court is

affirmed in part and reversed in part, and the case is remanded to the bankruptcy court for the

limited purpose of reducing the sanctions award by $400.

BACKGROUND

A.  The Debtors' Chapter 11 Cases

On April 14, 2010, SVCMC and certain of its affiliates (collectively, the "Debtors") filed petitions for relief under Chapter 11 of the Bankruptcy Code.  (Dkt. No. 1, No. 10-11963 (CGM) (Bankr. S.D.N.Y.))  The bankruptcy court ordered the joint administration of the Debtors' cases on April 16, 2010.  (Id., Dkt. No. 36)  Once the Debtors' petitions were filed, the Bankruptcy Code provided an automatic stay of, inter alia, "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title . . . ." 11 U.S.C. § 362(a).

The bankruptcy court entered an order (the "Confirmation Order," Dkt. No. 7, 14-cv-3293, App. 2)[1] confirming the Debtors' plan of reorganization (the "Plan," Dkt. No. 7, App. 1) on June 29, 2012, and by its terms the Plan became effective on the same date (the "Effective Date").  The Plan discharged and released claims against the Debtors and their estates that arose prior to the Effective Date.  (Plan at § 11.4; Confirmation Order at ¶ 13)  The Plan also extended the automatic stay until the closing of the chapter 11 cases, thereby continuing to enjoin any person from taking any action in furtherance of the prosecution of any claims against the Debtors.  (Plan at § 11.3; Confirmation Order at ¶ 26)  The Plan further appointed Eugene I. Davis (the "Liquidating Trustee") as the liquidating trustee of the Debtors' bankruptcy estates.

B.  Plaintiff's Claims and State Court Action

Plaintiff Elaine Garvy appears in this suit in her capacity as administratrix of the estate of her deceased father, Ronald Brophy.  On January 4, 2013, Garvy filed suit against

---

[1] Unless otherwise noted, docket citations refer to the docket of the instant appeal, 14-cv-3293.

SVCMC and certain of its affiliates in the New York Supreme Court, Kings County (the "State Court Action").  According to the Verified Complaint filed in the State Court Action, from March 25 to June 6, 2010 Brophy was a patient and resident of Holy Family Home, a nursing home in Brooklyn owned and operated by St. Jerome's Health Services Corporation d/b/a Holy Family Home ("Holy Family"), one of the Debtors.  (Dkt. No. 7, App. 3, Ex. D)  The complaint alleges that Brophy developed pressure ulcers and other ailments during his time at Holy Family Home that led to his death on June 13, 2010, one week after his discharge from the facility, and that the neglect of the nursing home staff caused these ailments.  (Id.)

Garvy retained Sheryl Menkes on July 12, 2010.  (Dkt. No. 7, App. 3, Ex. J at ¶ 8) On July 23, 2010, Garvy sent a request for Brophy's medical records to Holy Family Home.  (Id. at ¶ 10)  Similar requests were sent to SVCMC on September 21, 2010 and October 18, 2010. (Id. at ¶ 12)

Approximately two-and-a-half years later, Garvy brought the State Court Action on behalf of Brophy against a number of entities including SVCMC and Holy Family.  Garvey v. Lutheran Med. Center, Index No. 218/2013 (N.Y. Sup. Ct., Kings Cty.); Dkt. No. 7, App. 3, Ex. C, D.  The Liquidating Trustee learned of the State Court Action on or about April 18, 2013, when post-Effective Date SVCMC was served with a summons with notice.  (Korf Decl. at ¶ 5, Dkt. No. 7, App. 4)  The Liquidating Trustee responded on April 30, 2013 by sending a letter (the "April 30 Letter") to Ms. Garvy's counsel, Sheryl Menkes, informing her of the Debtors' discharge and the extension of the automatic stay, demanding the withdrawal of the State Court Action, and stating that if the State Court Action was not withdrawn, the Liquidating Trustee would file a motion in the bankruptcy court to enforce the automatic stay and seek attorneys' fees and damages (the "Enforcement Motion").  (Dkt. No. 7, App. 3, Ex. E)

While Ms. Menkes, as Garvy's counsel, may not have been cognizant of the

3

discharge and automatic stay provisions of the Plan prior to receipt of the April 30 Letter, the letter placed her on notice at which point she began on the path to the ultimate sanctions award against her.

C.   The State Court Order to Show Cause and the Enforcement Motion

Menkes first responded to the April 30 Letter on June 4, 2013 by phone and email.  (Enforcement Motion at ¶ 2, Dkt. No. 7, App. 3)  Representing that she had brought the State Court Action solely to establish the liability of the Debtors and recover from available insurance proceeds, Menkes demanded that the Liquidating Trustee lift the automatic stay and Plan injunction.  (Id.)  In response, the Liquidating Trustee researched whether insurance was available, determined that it was not, and informed Menkes by email the following day.  (Dkt. No. 7, App. 3, Ex. H)  Menkes responded on June 6, 2013 by requesting "a formal letter that [sic] the insurance policies are exhausted."  (Id.)  On June 7, 2013, the Liquidating Trustee complied with the request, sending Menkes a second letter (the "June 7 Letter") reiterating the demands in the April 30 Letter.  (Dkt. No. 7, App. 3, Ex. G)  The June 7 Letter attached the declaration of the corporate director of claims for Post-Effective Date SVCMC, Timothy J. Lenane (the "Lenane Declaration"), which attested in detail to the expiration of Holy Family's insurance policy and consequent lack of insurance coverage.  (Dkt. No. 7, App. 3, Ex. B)  The June 7 Letter also attached a draft of the Enforcement Motion, which the Liquidating Trustee represented would be filed in bankruptcy court if the State Court Action was not withdrawn by June 12, 2013.  (Dkt. No. 7, App. 3, Ex. G)

After receiving the June 7 Letter and the attached Lenane Declaration, in email correspondence beginning on June 8, 2013, Menkes repeatedly induced the Liquidating Trustee to delay filing the Enforcement Motion by representing that she would advise her client to

withdraw the State Court Action as soon as Garvy returned from a vacation.  (Dkt. No. 7, App. 3, Ex. H)  On June 11, Menkes stated that she would advise her client to withdraw the State Court Action upon her return.  (Id.) ("Yes I will advise her to withdraw.  I need to speak with her in person so I can explain it to her.")  On June 24, the Liquidating Trustee followed up with Menkes, who responded by indicating that her client was still on vacation and would not return until the following week or, at the latest, July 4, 2013.  (Id.)  Menkes further stated, "I am certain she will not have objections [to withdrawing the State Court Action] but I cannot do this without her knowledge and consent.  (Id.)  On July 3, the Liquidating Trustee followed up with Menkes again, and Menkes responded that she was going to meet with her client on July 21.   (Id.)

While continuing to represent that she would recommend withdrawal of the State Court Action and that she anticipated such withdrawal, Menkes covertly pursued a quite different course of action.  On June 5, 2013, apparently in order to avoid missing a service deadline, Menkes filed a second action against the Debtors in state court.  (Dkt. No. 7, App. 3, Ex. J; Index No. 10404/2013 (N.Y. Sup. Ct., Kings Cty.))  On June 19, 2013, Garvy's counsel sought, ex parte, and obtained an order to show cause in state court (the "Order to Show Cause").  (Dkt. No. 7, App. 3, Ex. I)  Garvy filed an affirmation in support of the Order to Show Cause; this affirmation failed to disclose any of the evidence produced by the Liquidating Trustee indicating that no insurance was available.  (Dkt. No. 7, App. 3, Ex. J)  The Order to Show Cause, signed by Justice Bert A. Bunyan, required the Liquidating Trustee to appear in state court and show cause why "an order should not be entered compelling [the Liquidating Trustee] to lift the stay on plaintiffs [sic] personal injury claim [against the Debtors] . . . ."  (Dkt. No. 7, App. 3, Ex. I)  This Order was not served on the Liquidating Trustee until one month later, on July 19, 2013.  (Enforcement Motion at ¶ 4)  Thus, on numerous occasions between obtaining the Order to Show Cause and serving it, Menkes not only failed to disclose these proceedings in state court but also

affirmatively represented that she anticipated withdrawing the State Court Action after conferring with her client.

Shortly after learning about the Order to Show Cause, the Liquidating Trustee filed the Enforcement Motion in bankruptcy court on July 29, 2013.  (Dkt. No. 7, App. 3)  The Liquidating Trustee appeared in state court for oral argument on the Order to Show Cause on July 31, 2013.  (Dkt. No. 7, App. 16 at 7)  On August 15, 2013, the bankruptcy court held a hearing on the Enforcement Motion (the "August 15 Hearing").  At the conclusion of the hearing, the bankruptcy court granted the Enforcement Motion and indicated that it would award certain attorneys' fees to the Liquidating Trustee.  (Dkt. No. 7, App. 7)  The bankruptcy court subsequently entered an order enforcing the automatic stay (the "Enforcement Order") on August 19, 2013.  (Dkt. No. 7, App. 9)

After the August 15 Hearing, Garvy's counsel, filed a letter that, together with two subsequently filed affidavits, the bankruptcy court construed as a motion for reconsideration. (Dkt. No. 7, Apps. 8, 12, 13)  While the motion for reconsideration was pending, on August 27, 2013, Garvy filed a Notice of Appeal of the Enforcement Order in this Court.  (Dkt. No. 1)  On September 6, 2013, Garvy moved in the bankruptcy court for a stay of the Enforcement Order pending the resolution of her appeal to this Court.  (Dkt. No. 3692, No. 10-11963 (Bankr. S.D.N.Y.))  The bankruptcy court held a hearing on both the motion for reconsideration and the motion for a stay pending appeal on September 19, 2013.  (the "September 19 Hearing," Dkt. No. 7, App. 15)  On September 26, 2013, the bankruptcy court entered orders denying both motions.  (Dkt. Nos. 3722, 3723, No. 10-11963 (Bankr. S.D.N.Y.))  On May 16, 2014, this Court dismissed Garvy's appeal of the Enforcement Order, holding that the appeal was moot as to all issues except the sanctions issue, which was not then ripe for appellate review.  In re Saint Vincent's Catholic Medical Centers of New York, 13 Civ. 6902 (PKC), 2014 WL 2086075.

D.  <u>Subsequent Proceedings Before the Bankruptcy Court</u>

   The bankruptcy court's September 26, 2013 order directed the Liquidating Trustee to file copies of actual fee invoices incurred in connection with the State Court Action and the Motion to Enforce.  (Dkt. No. 3723 at ¶ 2; No. 10-11963 (Bankr. S.D.N.Y.))  The same order directed Menkes to provide to the bankruptcy court for <u>in camera</u> review copies of her financial records, including her tax returns and profit-and-loss-statements for the years 2010 through 2013, demonstrating her alleged inability to pay the Liquidating Trustee's costs and fees. (<u>Id.</u> at ¶ 3)  The order also set a hearing for November 21, 2013 to determine the amount of fees to award the Liquidating Trustee.  (Id. at ¶ 5)  On the same day, the Liquidating Trustee submitted copies of actual fee invoices for the Liquidating Trustee's attorneys, though not for the Debtors' management company.  (Dkt. No. 7, App. 16)

   By letter dated November 1, 2013, Menkes submitted certain of the documents that the bankruptcy court ordered her to produce and asked for an adjournment of the hearing date to allow her to submit the remaining documents.  (Dkt. No. 7, App. 17)  On November 15, 2013, the bankruptcy court entered an order adjourning the hearing to December 19, 2013 and directing Menkes to produce by no later than December 12, 2013 her 2012 tax returns, 2012 profit and loss statement, and 2013 year-to-date profit and loss statement for <u>in camera</u> review. (Dkt. No. 7, App. 18)  Menkes requested a second adjournment of the hearing on November 21, 2013, and formally moved for adjournment on December 4, 2013.  (Dkt. No. 7, App. 19, 20) Menkes never submitted the financial documents that the bankruptcy court ordered her to produce by December 12, 2013.  506 B.R. 387 at 400.  There is no indication that Menkes requested an extension of this deadline or explained her failure to comply with the bankruptcy court's orders.  On December 17, 2013, the bankruptcy court entered an order cancelling the December 19, 2013 hearing and indicating that the amount of sanctions would be determined

based on the written materials already submitted.  (Dkt. No. 7, App. 21)

On March 21, 2014, the bankruptcy court issued the Decision.  The bankruptcy court imposed $83,515.00 in sanctions on Menkes pursuant to 28 U.S.C. § 1927.  506 B.R. at 403.  This award was comprised of three categories of attorneys' fees incurred by the liquidating trustee: (i) $2,511.00 incurred in communications with Menkes regarding the State Court Action, (ii) $17,929.00 incurred in defending against the State Court Action, and (iii) $63,075.00 in preparing and prosecuting the Motion to Enforce.  Id.

The bankruptcy court's sanctions award was based on five specific instances of conduct: for

> (i) filing the Show Cause Affirmation in the Kings County Action after having been informed by the April 30 Letter that the continued prosecution of the action violated the Confirmation Order; (ii) representing to the state court in the Show Cause Affirmation that Ms. Garvey intended to pursue insurance coverage which Ms. Menkes knew was not available; (iii) failing to inform the state court that Ms. Menkes knew that no insurance coverage was available; (iv) failing to notify the Liquidating Trustee that Ms. Menkes had filed the Show Cause Affirmation or obtained the Show Cause Order from the state court; and (v) representing to the Liquidating Trustee that Ms. Garvey would withdraw the Kings County Action in order to entice the Liquidating Trustee to delay filing the Motion to Enforce until after a hearing on the Order to Show Cause could be held in the Kings County Action.

Id. at 400.


STANDARD OF REVIEW

District courts are vested with appellate jurisdiction over "final judgments, orders, and decrees" of the bankruptcy courts.  28 U.S.C. § 158(a)(1).  A district court reviews legal conclusions of the bankruptcy court de novo and factual conclusions for clear error.  Fed. R. Bankr. P. 8013; Stoltz v. Brattleboro Hous. Auth. (In re Stoltz), 315 F.3d 80, 87 (2d Cir. 2002).  A bankruptcy court's imposition of sanctions under 28 U.S.C. § 1927 is reviewed for abuse of

discretion.  Baker v. Latham Sparrowbush Assocs. (In re Cohoes Indus. Terminal, Inc.), 931 F.2d 222, 230 (2d Cir. 1991) (citations omitted).

A bankruptcy court abuses its discretion when it arrives at "(i) a decision resting on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (ii) a decision that, though not necessarily the product of legal error or clearly erroneous factual finding, cannot be located within the range of permissible decisions."  In re Aquatic Dev. Group, Inc., 352 F.3d 671, 678 (2d Cir. 2003) (internal quotations and citation omitted); see also In re Enron Corp., 364 B.R. 482, 486 (S.D.N.Y. 2007) ("The Court is not to consider whether it would have made the same decision, but only whether the decision was reasonable.").  However, "[b]ecause the trial court imposing sanctions may act as accuser, fact finder and sentencing judge all in one, our review of such an order is more exacting than under the ordinary abuse-of-discretion standard."  Enmon v. Prospect Capital Corp., 675 F.3d 138, 143 (2d Cir. 2012) (internal citations and quotations omitted).

DISCUSSION

A.  Sanctions Pursuant to 28 U.S.C. § 1927

Section 1927 of Title 28 of the United States Code provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

"By its terms, § 1927 looks to unreasonable and vexatious multiplications of proceedings; and it imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics."  United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers

9

of Am., AFL-CIO, 948 F.2d 1338, 1345 (2d Cir. 1991).  "The purpose of this statute is to 'deter

unnecessary delays in litigation.' "  Id. (quoting H.R. Conf. Rep. No. 1234, 96th Cong., 2d Sess.

8, reprinted in 1980 U.S. Code Cong. & Admin. News 2716, 2782).  Bankruptcy courts may

exercise the power to sanction under section 1927.  In re Cohoes, 931 F.2d at 230.

   In contrast to the objective reasonableness standard that applies to an award of

sanctions under Rule 11, Fed. R. Civ. P., "[b]ad faith is the touchstone of an award under

[section 1927]."  Teamsters, 948 F.3d at 1345.  The imposition of sanctions under section 1927

"requires a clear showing of bad faith."  Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir.

1986) (citation omitted); see also State Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374

F.3d 158, 180 (2d Cir. 2004) ("Section 1927 authorizes the imposition of sanctions only when

there is a finding of conduct constituting or akin to bad faith.") (citation and internal quotations

omitted).  Such sanctions are proper "when the attorney's actions are so completely without

merit as to require the conclusion that they must have been undertaken for some improper

purpose such as delay."  Oliveri, 675 F.3d at 1273.

   In order to award sanctions under section 1927, a court "must find clear evidence

that (1) the offending party's claims were entirely without color, and (2) the claims were brought

in bad faith—that is, 'motivated by improper purposes such as harassment or delay.' "  Eisemann

v. Greene, 204 F.3d 393, 396 (2d Cir. 2000) (quoting Schlaifer Nance & Co. v. Estate of Warhol,

194 F.3d 323, 336 (2d Cir. 1999)); accord Enmon, 675 F.3d at 143.  Further, the factual findings

establishing these two requirements must exhibit a high degree of specificity.  Enmon, 675 F.3d

at 143.

B. <u>Menkes's Attempt to Obtain Relief from the Automatic Stay in State Court Was Entirely Without Color.</u>

At the outset, the Court notes that it is not Menkes's initial pursuit of claims arguably discharged in the debtors' Chapter 11 cases that gave rise to the sanctions challenged here.  <u>See</u> 506 B.R. at 400.  Rather, it is the actions she took once having learned of the discharge and extension of the section 362 stay.  <u>See</u> <u>id.</u>  Each of the authorities relied upon by Menkes in this appeal addresses whether state courts have the authority to determine the scope of a debtor's discharge.  None of the authorities addresses the issue of whether a state court may grant relief from an automatic stay provided for under federal law.

While both the automatic stay and the discharge serve to block the pursuit of certain claims against an entity that has availed itself of the protections of the bankruptcy code by filing a petition for relief as a debtor, the two are fundamentally distinct.  The automatic stay, initially provided for in a bankruptcy case under 11 U.S.C. § 362, serves to

> promote two principal purposes of the Bankruptcy Code.  First, the automatic stay provides the debtor with a breathing spell from his creditors.  In addition, the automatic stay allows the bankruptcy court to centralize all disputes concerning property of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas.  The Bankruptcy Code provides for centralized jurisdiction and administration of the debtor, its estate and its reorganization in the Bankruptcy Court, and this policy is effectuated by Sections 362 and 105 of the Code.

<u>In re Ionosphere Clubs, Inc.</u>, 922 F.2d 984, 989 (2d Cir. 1990) (citations and internal quotations omitted).  Thus, the automatic stay is a temporary device ensuring the efficient administration of a debtor's bankruptcy case in the single, centralized forum of the bankruptcy court.  In contrast, in a Chapter 11 case a debtor's discharge pursuant to section 524 is a permanent injunction that serves to bind all creditors to the treatment provided for under a confirmed plan, providing the

debtor, creditors, and any other interested parties with finality even after the bankruptcy case has closed.

It is well established that "[r]elief from the effect of the automatic stay provisions may be granted only by the bankruptcy court." Matter of Arbitration Between Barbier & Shearson Lehman Hutton Inc., 943 F.2d 249, 250 (2d Cir. 1991) (citing 11 U.S.C. § 362(d) and (f)). Accord Ostano Commerzanstalt v. Telewide Sys., Inc., 790 F.2d 206, 207 (2d Cir. 1986) ("Relief from the effect of the automatic stay provisions of section 362(a)(1) must be sought from the bankruptcy court pursuant to section 362(d), and not from this court."); In re Tampa Chain Co., Inc., 835 F.2d 54, 55 (2d Cir. 1987); Acands, Inc. v. Travelers Cas. & Sur. Co., 435 F.3d 252, 261 (3d Cir. 2006) ("Only the bankruptcy court with jurisdiction over a debtor's case has the authority to grant relief from the stay of judicial proceedings against the debtor.") (citation omitted); Matter of Cont'l Airlines, 928 F.2d 127, 129 (5th Cir. 1991) ("Only the Delaware bankruptcy court may grant relief from the effect of the automatic stay provision."); Farley v. Henson, 2 F.3d 273, 275 (8th Cir. 1993) ("Only the bankruptcy court may grant relief from the automatic stay."); In re Wardrobe, 559 F.3d 932, 934-35 (9th Cir. 2009) ("A party may petition the bankruptcy court for relief from the automatic stay. . . However, because only an order of the bankruptcy court can authorize any further progress in the stayed proceedings, it follows that the continuation of the [stayed] proceeding can derive legitimacy only from the bankruptcy [] court order.") (internal quotations and citations omitted).

New York state courts recognize the same principle. See, e.g., Carr v. McGriff, 8 A.D.3d 420 (2d Dep't. 2004) (holding that orders issued by the New York Supreme Court post-petition, including a default judgment of foreclosure and sale, were in violation of the automatic stay and therefore void); see also id. at 422 ("Congress has declared that actions to terminate,

12

annul, or modify the automatic stay are core bankruptcy proceedings. Consequently, it is undisputed that only a bankruptcy court has jurisdiction to terminate, annul, or modify the automatic stay.") (internal citations and quotations omitted).  Further, the automatic stay is not limited to litigants but also applies to state and federal courts.  Id. at 422 ("Once triggered by a debtor's bankruptcy petition, the automatic stay suspends any non-bankruptcy court's authority to continue judicial proceedings then pending against the debtor. This is so because section 362's stay is mandatory [] and applicable to all entities, including state and federal courts.") (quoting Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1206 (3d Cir. 1991)).

The six New York cases relied upon by Menkes provide no support for her contention that a state court is empowered to lift a section 362 stay provided for under the federal bankruptcy laws.  While these cases support the proposition that state courts in some circumstances are empowered to determine the scope of a debtor's discharge, the question of whether a claim is discharged by the confirmation of a debtor's plan is entirely independent from the question of whether an action against a debtor is barred by a section 362 stay.  The two cases that Menkes specifically quotes concern only the former inquiry.  Chevron Oil Co. v. Dobie, 40 N.Y.2d 712, 715 (1976) (holding, prior to the enactment of the Bankruptcy Code, that "a State court remains an appropriate forum for determining the effect of a discharge, with three exceptions.  Only when these exceptions . . . are at issue does the Bankruptcy Court have exclusive jurisdiction."); Vleming v. Chrysler Corp., Dodge Div., 455 N.Y.S. 2d 293, 294 (2d Dep't 1982) ("State courts retain the power, subject to statutory exceptions not applicable here . . . to determine the effect of a discharge in bankruptcy.") (citing Chevron Oil Co., 40 N.Y.2d at 714-15).

13

The same is true of the remaining cases that Menkes relies upon.  In State v. Wilkes, a pre-Bankruptcy Code case, the New York Court of Appeals stated that "the State courts retain the power, subject to statutory exception, to determine the effect of a discharge." 41 N.Y.2d 655, 657 (1977).  In Roman v. Hudson Tel. Associates, 784 N.Y.S.2d 484, 484-85 (1st Dep't 2004), the parties obtained a so-ordered stipulation from the bankruptcy court granting a third-party plaintiff relief from the automatic stay in order to liquidate its claims in state court and recover only from the debtor's insurer.  In dicta, the court further observed that "[e]ven without benefit of this so-ordered stipulation, a claim asserted for the sole purpose of establishing the liability of a party's insurer is not barred by that party's discharge in bankruptcy." Id. at 485.

The court in Lumbermens Mut. Cas. Co. v. Morse Shoe Co., 630 N.Y.S.2d 1003 (1st Dep't 1995), similarly addressed only whether a claim was discharged in a bankruptcy case, and the case did not concern a section 362 stay.  Id. at 1005 ("Where, as here, a tort claimant seeks to proceed against a discharged debtor only for the purpose of recovering against an insurer, it has been held that suit is not barred by the discharge injunction.").  In Minafri v. United Artists Theatres, Inc., the Supreme Court, Westchester County held that a plaintiff could proceed against a former debtor in order to recover from the debtor's insurer, and that such an action was not barred by the debtor's discharge under 11 U.S.C. section 524.  5 Misc. 3d 474, 478 (N.Y. Sup. Ct., Westchester Cty. 2004).  The debtor's bankruptcy case had closed, and thus no automatic stay existed as a bar to the institution of litigation against the debtor.   Id.

The self-executing automatic stay provided for under section 362(a) is limited in duration by the terms of section 362(c).  Specifically, subsections (1) and (2) of section 362(c) provide that the stay of acts against property of the estate continues until such property is no

longer property of the estate, and that the stay of all other acts covered by subsection (a) continues until the earliest of the closing of the case, the dismissal of the case, or, in a Chapter 11 case, the time a discharge is granted or denied.[2]  However, the expiration provisions set forth in section 362(c) are expressly made subject to a procedure for the modification of the stay in section 362(d).  The Bankruptcy Code authorizes a bankruptcy court, "[o]n request of a party in interest and after notice and a hearing," to "grant relief from the stay provided under subsection (a) of this section, such as by . . . modifying . . . such stay."  11 U.S.C. § 362(d).

Here, because the Plan provided a discharge for the Debtors in their Chapter 11 case, the automatic stay would have terminated on the Effective Date of the Plan absent the grant of a motion by a party in interest to extend the stay.  In seeking confirmation of the proposed Plan, the Debtors did so move, and the bankruptcy court granted their request to extend the stay. After notice and a hearing held on June 25, 2012, the bankruptcy court issued the Confirmation Order, which, inter alia, extended the automatic stay through the closing of the debtors' Chapter 11 cases.  Confirmation Order at ¶ 26 ("[A]ll injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of this Court and extant on the date of entry of this Confirmation Order . . . shall remain in full force and effect until the Closing of the Chapter 11 Cases . . . .").[3]

---

[2] Section 362(c) provides in relevant part:
    **(c)** Except as provided in subsections (d), (e), (f), and (h) of this section--
        **(1)** the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate;
        **(2)** the stay of any other act under subsection (a) of this section continues until the earliest of--
            **(A)** the time the case is closed;
            **(B)** the time the case is dismissed; or
            **(C)** if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied . . . .
11 U.S.C. § 362(c).
[3] Neither in the bankruptcy court nor in this Court has Menkes challenged the bankruptcy court's extension of the automatic stay.  To the contrary, the Order to Show Cause obtained by Menkes referenced the automatic stay and

Regardless of whether Menkes was aware of the stay when she filed the State Court Action in January 2013, the Liquidating Trustee's April 30, 2013 letter unambiguously put her on notice of the stay, with specific citations to the relevant provisions of the confirmed Plan and the Confirmation Order.  Despite this knowledge and unequivocal case law stating that only a bankruptcy court can grant relief from an automatic stay, Menkes (1) commenced a second action in state court against the debtors on June 5, 2013, (2) filed the Order to Show Cause in state court on June 16, 2013, (3) and obtained the Order to Show Cause on June 19, 2013. Menkes's pursuit of relief from the automatic stay in state court was entirely without color.

Aside from the previously discussed state cases, Menkes contends that her actions were justified by her belief that there was insurance available to cover her claims.  As the foregoing discussion makes clear, this argument is beside the point: regardless of whether or not insurance proceeds were available, Menkes was still required to obtain relief from the section 362 stay in order to pursue any such proceeds, and such relief could only be granted by the bankruptcy court.  Accordingly, Menkes's pursuit of relief from the section 362 stay in state court "was without a colorable basis."  Enmon, 675 F.3d at 143.

C.  Menkes's Actions in Connection With the Order to Show Cause Were in Bad Faith.

The bankruptcy court found that "the evidence is clear that Ms. Menkes filed the Show Cause Affirmation and sought issuance of the Show Cause Order in bad faith and for the improper purpose of delaying the Liquidating Trustee's enforcement of the Plan Injunction in this Court."  506 B.R. at 401.  Specifically, the bankruptcy court found that Menkes (1) had actual knowledge of the discharge and injunction provisions of the confirmed plan, (2) knew that

---

required the Liquidating Trustee to show cause why "an order should not be entered compelling [the Liquidating Trustee] to lift the stay . . . ."  (Dkt. No. 7, App. 3, Ex. I)  Accordingly, this Court has no occasion to pass on the propriety of the extension of the section 362 stay.

there was no insurance from which her client could ultimately recover, (3) disregarded this knowledge to seek and obtain the Order to Show Cause in state court, (4) failed to disclose significant evidence of the lack of insurance, including the Lenane Declaration, to the state court, and (5) concealed the issuance of the Order to Show Cause from the Liquidating Trustee while repeatedly requesting that the Liquidating Trustee delay filing the Motion to Enforce based on a representation that the State Court Action would be withdrawn.  Id. at 401-02.  The bankruptcy court considered and rejected as incredible Menkes's claim that she had "misapprehended" that there was no insurance coverage available.  Id. at 402.

        The bankruptcy court's determination that Menkes's actions were in bad faith was not an abuse of discretion.  Her conduct was intended to, and did, repeatedly delay the Liquidating Trustee's filing of the Enforcement Motion.  In covertly seeking the Order to Show Cause in state court, Menkes was trying to secure a first-mover advantage by creating a conflict between the existing orders and injunctions of the bankruptcy court and the injunction she sought from the state court.  That well-established law foreclosed the state court from providing relief from the automatic stay sought by Menkes does not negate her bad faith in proceeding in this manner.  See Enmon, 675 F.3d at 141, 144 (upholding a sanctions award under section 1927 where a litigant sought and obtained an unconstitutional TRO enjoining a federal court action). A party may act in subjective bad faith even when his or her actions are undertaken based on an erroneous view of the law.  Through deception, Menkes induced the Liquidating Trustee to delay filing the motion to enforce until well after the State Order to Show Cause was obtained and only two days before the Liquidating Trustee was required to appear in state court pursuant to that order.  By so proceeding, Menkes improperly delayed the proceedings in bankruptcy court and further vexatiously multiplied those proceedings by compelling the litigation of an entirely colorless claim for a state court injunction providing relief from the automatic stay.

No amount of valid, enforceable insurance coverage could have justified Menkes's actions in knowingly disregarding the section 362 stay and seeking relief from that stay in state court. Nevertheless, Menkes argues that she had a good faith basis for proceeding in state court because she believed that insurance was available despite the assurances and evidence provided to her by the Liquidating Trustee. She characterizes the Liquidating Trustee's statements in phone conversations and letters coupled with the Lenane Declaration as "bald, self-serving assertions," and contends that the Liquidating Trustee never provided "documentary evidence" to her satisfaction.

Aside from the bar of the section 362 stay, this position is untenable for three reasons. First and foremost, at the time the Liquidating Trustee provided its evidence, Menkes did not ask for additional evidence. The only evidence that Menkes specifically requested from the Liquidating Trustee was "a formal letter that [sic] the insurance policies are exhausted." (Dkt. No. 7, App. 3, Ex. H at 6) On June 7, 2013, the Liquidating Trustee provided such a letter and further provided the Lenane Declaration. Rather than ask the Liquidating Trustee for additional proof that there was no insurance, Menkes repeatedly represented that she would advise her client to withdraw the action, impliedly indicating to the Liquidating Trustee that the proffered evidence was adequate. Id. at 9-13.

Second, documentary evidence was in fact provided in the form of the Lenane Declaration, made under penalty of perjury, which provides a detailed account of the expiration of the debtors' insurance and the number of the expired policy. Third, Menkes has previously conceded that documentary evidence was provided, stating in letters and motions to the bankruptcy court that she "misapprehended" or "failed to comprehend that there was documentary evidence to support the Liquidating Trustee's allegations that there was no insurance available." (Dkt. No. 7, App. 14 at ¶ 8; see also id., App. 9; App.12 at ¶ 6),

18

Confronted with the same argument, the bankruptcy court found that Menkes's argument that she "misapprehended" the availability of insurance proceeds was not credible.  A bankruptcy court's credibility determinations are entitled to deference.  In re Bonnanzio, 91 F.3d 296, 302 (2d Cir. 1996) (citing Fed. R. Bankr. P. 8013 ("[D]ue regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.")).  In any event, this factual issue is not dispositive to the instant appeal because even if it is assumed that insurance coverage was available, as outlined above Menkes still would have been required to proceed in bankruptcy court to obtain relief from the section 362 stay before she could pursue any action against the debtor in state court.

In Enmon, 675 F.3d 138, the Second Circuit affirmed an award of sanctions under section 1927 under circumstances analogous to those of the instant case.  There, plaintiff Enmon brought claims in Texas state court against a defendant corporation based on a failed merger transaction.  Id. at 141.  Relying on the arbitration clause in the transaction documents, the defendant filed suit in this Court and moved to compel arbitration.  Id.  Enmon responded by seeking a temporary restraining order ("TRO") in Texas court to stay the New York arbitration proceeding and also prohibiting the defendants "from taking any further action in New York state or federal courts"; the application failed to disclose the existence of the SDNY action.  Id. In turn, the defendant sought a TRO in the SDNY enjoining the Texas action.  Id.  Both courts issued the requested TROs on the same day; however, once the defendants advised the Texas court that its order unconstitutionally enjoined a federal court action, the Texas court suspended its TRO.  Id.

The district court subsequently granted defendants' motions for sanctions under section 1927, concluding that Enmon sought the Texas TRO without a colorable basis and resting its bad faith determination on Enmon's failure to disclose that the requested injunction

19

would enjoin an ongoing federal court proceeding.  Id. at 143.  The Second Circuit upheld the

sanctions award, noting that the district court's bad faith determination "rested on the finding

that [plaintiff's] failure to disclose that its Texas TRO application sought to enjoin a federal court

action . . . constituted a misrepresentation by omission."  Id. at 144 (internal quotations omitted).

Here, as discussed above, Menkes's pursuit in state court of an injunction

modifying the bankruptcy court's automatic stay order was as "entirely without color" as

Enmon's pursuit of a state court injunction enjoining a federal court action.  Further, although

Menkes necessarily disclosed the existence of the bankruptcy case to the state court judge, she

failed to disclose the evidence of a lack of insurance proceeds, including the Lenane Declaration.

This is a "misrepresentation by omission" that supports the bankruptcy court's finding of bad

faith.  675 F.3d at 144.  See Rule 3.3(d), N.Y. Rules of Professional Conduct, 22 N.Y.C.R.R.

1200.0 ("In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known

to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts

are adverse."); accord Rule 3.3(d), ABA Model Rules of Professional Conduct.

Accordingly, the bankruptcy court did not abuse its discretion in awarding

sanctions under section 1927 based on its finding that Menkes acted in bad faith.


D.  With One Exception, The Bankruptcy Court Did Not Abuse Its Discretion in
    Determining the Amount of the Award.

1.  Fees Awarded by the Bankruptcy Court

The bankruptcy court found that the Liquidating Trustee's "excess costs,

expenses, and attorneys' fees" totaled $83,515.00.  506 B.R. at 403 (citing 28 U.S.C. § 1927).

This total was comprised of 153.3 billable hours of work at an average hourly rate of

approximately $545, resulting in fees of "(i) $2,511.00 incurred in communications with Ms.

Menkes; (ii) $17,929.00 incurred in defending against the Kings County Action; and (iii) $63,075.00 incurred in preparing and prosecuting the Motion to Enforce." Id.

More specifically, the billed communications with Menkes included (i) the drafting of the April 30 Letter, (ii) email correspondence with Menkes between June 6, 2013 and June 11, 2013, and (iii) an August 1, 2013 email sent to Menkes regarding the Enforcement Motion. (Dkt. No. 7, App. 16) The fees incurred in connection with defending the State Court Action at the hearing pursuant to the Order to Show Cause included internal correspondence relating to the matter, research, and preparation for and participation in oral argument before the state court on July 31, 2013. (Id.) The remaining fees encompassed the drafting, revision, and filing of the Enforcement Motion; reviewing and responding to Menkes's written opposition to the Enforcement Motion; and preparation for and participation in the August 15 Hearing. (Id.)

Notably, the Liquidating Trustee has not sought, and the bankruptcy court did not award, any fees in connection with matters subsequent to the entry of the Enforcement Order, including Menkes's motions for reconsideration and for a stay pending appeal, the September 19 Hearing, and any proceedings before this Court in connection with the prior appeal in this case. See In re St. Vincent's Catholic Medical Centers of New York, 2014 WL 2086075.

2. The Fee Relating to the April 30 Letter Was Not Properly Included in the Sanctions Award.

This Court concludes that the bankruptcy court erred by including $400 of attorneys' fees incurred in connection with the drafting of the April 30 Letter. The course of conduct on which the bankruptcy court based its sanctions award began with her "filing the Show Cause Affirmation in the Kings County Action after having been informed by the April 30 Letter that the continued prosecution of the action violated the Confirmation Order . . . ." 506

B.R. at 400.  Because the bankruptcy court found that the April 30 Letter is what put Menkes on

notice of the automatic stay and Plan injunction, attorneys' fees incurred in the drafting of this

letter are not properly included in the award under section 1927.

There is no evidence, and the bankruptcy court made no finding, that Menkes was

actually aware of the Plan provisions barring her actions prior to the receipt of the April 30

Letter.  Drafting the April 30 Letter, therefore, falls outside the scope of expenses incurred as a

result of Menkes's bad faith conduct as determined by the bankruptcy court.  Accordingly, this

expense was not properly included within the scope of the "attorneys' fees reasonably incurred

because of" Menkes's sanctionable conduct.  28 U.S.C. § 1927.  The sanctions award must

therefore be reduced by $400, the amount billed in connection with drafting the April 30 Letter.

(Dkt. No. 7, App. 16 at 4)

3.  <u>The Remaining Attorneys' Fees Were Properly Included in the Sanctions Award</u>.

Having taken account of this single exception, the Court concludes that the

bankruptcy court did not abuse its discretion in assessing the remaining $83,115.00 of fees.  With

respect to the fees incurred by the Liquidating Trustee in state court, the Court agrees that "Ms.

Menkes' actions in delaying the Liquidating Trustee from filing the Motion to Enforce while

simultaneously prosecuting the Order to Show Cause in the Kings County Action to pursue non-

existent insurance coverage are the very epitome of "multipl[ying] proceedings . . . unreasonably

and vexatiously."  506 B.R. at 402 (quoting 28 U.S.C. § 1927).  As discussed, the well-settled

principle that only a bankruptcy court may grant relief from an automatic stay renders her

prosecution of the Order to Show Cause "entirely without color."  Further, her deceptive conduct

in securing repeated delays in the filing of the Enforcement Motion by representing that she

would recommend withdrawal of the State Court Action while failing to disclose her actions in

state court, as well as her inadequate disclosure to the state court, constitutes bad faith.

As to the remaining fees, reasoning that "an injured party may recover attorneys' fees that are attributable to 'investigating, researching[,] and fighting' the meritless claims and those that are incurred to 'research, prepare, and prosecute its sanctions motion,' " 506 B.R. at 403 (quoting In re Spectee Grp., 185 B.R. 146, 160 (Bankr. S.D.N.Y. 1995) (internal quotations omitted)), the bankruptcy court found it "appropriate to shift the burden of these additional fees . . . to Ms. Menkes." Id. at 403.

With the one noted exception, the bankruptcy court properly limited the scope of the fee award. The Liquidating Trustee's drafting, filing, and prosecuting the Enforcement Motion was a necessary response to the improper Order to Show Cause in state court. Even though Menkes filed the State Court Action in January 2013, it was her decision to seek and obtain the Order to Show Cause that vexatiously multiplied the proceedings and made filing the Enforcement Motion immediately necessary to thwart the unnecessary dissipation of the Debtors' assets. Aside from the single billable hour attributable to the drafting of the April 30 Letter, the bankruptcy court imposed no sanctions in connection with Menkes's initial filing of the State Court Action. Rather, the sanctions award was imposed based on the Liquidating Trustee's necessary responses to Menkes's vexatious multiplication of the proceedings by filing the Order to Show Cause in state court. Accordingly, the bankruptcy court did not abuse its discretion in shifting the burden of the fees incurred in connection with filing and prosecuting the Enforcement Motion. Nor did the bankruptcy court abuse its discretion in awarding fees incurred through the Liquidating Trustee's wasted efforts to persuade Menkes to withdraw the State Court Action, with the one exception already discussed.

E.  The Bankruptcy Court Did Not Abuse Its Discretion in Declining to Reduce the Award.

Menkes raises two objections to the amount of sanctions.  First, she states generally that $83,515.00 is excessive.  But as the bankruptcy court observed, despite having had multiple opportunities to do so Menkes never specifically objected "to the portions of the Liquidating Trustee's attorneys' fees that she found to be unreasonable."  506 B.R. at 404.  The bankruptcy court did not abuse its discretion in declining to reduce the size of the sanctions based on "a generalized objection to the size of the award."  Id. (citing In re Spectee, 185 B.R. at 163).

Second, Menkes contends that she lacks the means to pay.  The bankruptcy court acknowledged that "it lies well within the district court's discretion to temper the amount to be awarded against an offending attorney by a balancing consideration of his ability to pay."  Oliveri, 803 F.2d at 1281 (citations omitted).  However, the bankruptcy court noted that despite its issuance of two orders directing Menkes to submit, no later than December 12, 2013, tax returns and profit and loss statements to support her contention that she was unable to pay the sanctions, Menkes still had not submitted the required documents when the Decision was issued on March 21, 2014.  506 B.R. at 404; Dkt. Nos. 3723 and 3757 (No. 10-11963 (Bankr. S.D.N.Y.)).  Accordingly, based on the record before it, the bankruptcy court did not abuse its discretion in declining to reduce the amount of sanctions based on Menkes's unsupported contention that she was unable to pay the award.

While entirely failing to acknowledge her disregard for the bankruptcy court's two orders, Menkes in her brief assumes that this Court will consider two documents that she submitted to the bankruptcy court twenty-one days after the issuance of the Decision.  Specifically, Menkes filed affidavits that attached excerpts from her 2012 tax return and the 2012 profit and loss statement for her sole practice.  (Appellant Br. at Ex. R, Dkt. No. 6)  These

24

documents constituted two of the three items that Menkes was ordered to produce no later than December 12, 2013 in the bankruptcy court's November 15, 2013 order, Dkt. No. 7, App. 18. Menkes still has not produced the third item, a 2013 year-to-date profit and loss statement.

This Court's review is "limited to the record as it existed before the Bankruptcy Court." In re MF Global, Inc., 12-cv-8784 (CM), 2013 WL 652421, at *1 (S.D.N.Y. Feb. 22, 2013) (citing Fed. R. Bankr. P. 8006). Particularly in light of Menkes's failure to comply with the bankruptcy court's order to produce the documents within four months of the deadline, to seek any extension of the deadline, or to at any stage—including on this appeal— explain her failure to produce the documents, this Court declines to condone Menkes's decision to wait until three weeks after the issuance of the bankruptcy court's decision to produce the documents. Accordingly, this Court will not consider these two documents for the first time on appeal.

Courts retain discretion over the final amount of sanctions awarded under section 1927. In re Green, 422 B.R. 469, 477 (Bankr. S.D.N.Y. 2010). As the Ninth Circuit has observed, the statute's use of the permissive "may" provides "substantial leeway on the . . . court imposing sanctions," and therefore "with § 1927 as with other sanctions provisions . . . courts enjoy much discretion in determining whether and how much sanctions are appropriate." Haynes v. City & Cnty. of San Francisco, 688 F.3d 984, 987 (9th Cir. 2012). The bankruptcy court acknowledged this discretion but declined to reduce the sanctions. This decision was not an abuse of discretion.

F. Due Process

    1. The Bankruptcy Court Was Not Required to Provide a Jury Trial or Criminal Procedure Protections.

Arguing in the alternative, Menkes contends that even if the sanctions were

25

appropriate, the bankruptcy court erred by failing to provide her with a formal jury trial.  Menkes relies on Mackler Productions, Inc. v. Cohen, 146 F.3d 126 (2d Cir. 1998), contending that the case stands for the proposition that an attorney facing sanctions in excess of $10,000 is entitled to a jury trial.  But this reading misinterprets the case in two ways.  First, the Second Circuit expressly declined to decide whether a jury trial was warranted under the circumstances of the case.  Id. at 130 n.3 ("If the district court undertakes retrial of the punitive sanction, it should consider whether the appellant will have the right to jury trial. We express no view as to whether jury trial would be warranted.").

Second, the court's requirement that "procedural protections employed in the criminal process" be provided turned not on the amount of the sanctions award but on the punitive nature of the award.  The court upheld a compensatory sanctions award of $45,000.  Id. at 130 ("[T]he full panoply of criminal procedure safeguards was not required with respect to the $45,000 sanction because it was compensatory in nature . . . .").  In contrast, "the imposition of a sufficiently substantial punitive sanction requires that the person sanctioned receive the procedural protections appropriate to a criminal case."  Id.  In determining that such protections were required with respective to the district court's assessment of a $10,000 punitive sanction, the Second Circuit cited several considerations that led to the conclusion that the award was a "sufficiently substantial punitive sanction."  Id. at 129-30.

Here, the award of sanctions was compensatory in nature, as the quantum derives from the fees incurred by the Liquidating Trustee in defending against the State Court Action and litigating the Enforcement Motion: the bankruptcy court found the fees "reasonable and necessary" to defend against Menkes's actions.  Further, the sanction was payable to the Liquidating Trustee rather than to the bankruptcy court, to compensate the Liquidating Trustee for what he had actually spent on behalf of the estate.  See Margo v. Weiss, 213 F.3d 55, 62 (2d

Cir. 2000) (holding that criminal procedure protections were not required because, in contrast to Mackler, the district court's award of fees "was meant to compensate the defendants for the extra costs, including legal fees, created by the plaintiffs' unreasonable conduct, and as such the fees were payable to the defendants.").

2.   The Sanctions Award Procedures Satisfy Due Process Requirements.

Even where criminal procedure protections are not appropriate, a party facing sanctions is still entitled to receive notice of the sanctions award and an opportunity to be heard. Mackler, 146 F.3d at 130.  Notice in this context means that "the subject of a sanctions motion [must] be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense."  60 E. 80th St. Equities, Inc. v. Sapir (In re 60 E. 80th St. Equities, Inc.), 218 F.3d 109, 117 (2d Cir. 2000).  A reasonableness standard applies to the determination of the required content of a party's opportunity to be heard in this context.  See Klein v. Ulster Sav. Bank (In re Stein), 127 F.3d 292, 294-95 (2d Cir. 1997).

Menkes received notice and an opportunity to be heard.  The Enforcement Motion itself gave Menkes notice of the authority under which sanctions would be sought, and this motion was provided to Menkes well in advance of the initial filing of the Enforcement Motion, on June 7, 2013.  The Enforcement Motion included a detailed recitation of the conduct for which sanctions would be sought.  Further, the bankruptcy court indicated its intention to award sanctions pursuant to 28 U.S.C. section 1927 at the August 15 Hearing.

Menkes also had an adequate opportunity to be heard: the bankruptcy court held two hearings on the issue on August 15 and September 19, 2013, and had scheduled a third before canceling it after Menkes's repeated requests for adjournments.  (Dkt. No. 7, App. 21)

Menkes was given the opportunity to submit pleadings before each hearing, and did submit such pleadings. (Dkt. No. 7, Apps. 8, 12, 13, 14) The procedures provided by the bankruptcy court satisfied the requirements of due process under the circumstances.

CONCLUSION

There is little doubt (and it is uncontested) that the attorneys' fees awarded (save for the $400 referred to above) were actually and necessarily incurred as a result of Menkes's course of conduct. This sanction was not a penalty but a shifting of attorneys' fees. One side or the other—in this case, either Menkes or the Debtors' unsecured creditors—must bear the burden of these fees. The bankruptcy court acknowledged its discretion to reduce the award based on an inability to pay and invited Menkes to submit proof of financial hardship. Menkes declined this invitation and disregarded the bankruptcy court's order to produce specific documents without explanation. Only after the bankruptcy court finalized the award did she submit any of the specifically required documents, and even then she produced only two of the three documents. In sum, the problem that Menkes faces is entirely of her own creation.

For the foregoing reasons, the order of the bankruptcy court is AFFIRMED in part and REVERSED in part, and the case is REMANDED to the bankruptcy court for the entry of a reduced sanctions award consistent with this opinion. The Clerk is directed to close the case.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
        July 16, 2014

28